**M. LOWENSTEIN & SONS, Inc., v. BRITISH–AMERICAN MFG. CO. et al.**

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 281.

1. **Usury 53—Mortgage "bona fide" within exception to usury statute, though agreement for services be cloak for additional interest.**

The bona fides of a mortgage, within Gen. St. Conn. 1918, § 4803, as amended by Laws 1921, c. 118, excepting from section 4798, the usury statute, a bona fide mortgage of real property exceeding $500, is unaffected by a separate agreement for services being a cloak for additional interest; "bona fide" being good faith without fraud or deception—that is, good faith and honesty as distinguished from bad faith.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bona Fide.]

2. **Usury 15 — Definite agreement to pay more than legal rate necessary.**

To establish usury there must be a definite agreement to pay in any event an amount in excess of the legal rate; and an agreement to pay, in addition to an amount less than the legal limit, a percentage of an uncertain sum, which may or may not make it more, is not of itself usurious.

3. **Mortgages 10—Usury 34—Mortgage on manufactory, though covering personalty, a real estate mortgage.**

In view of Gen. St. Conn. 1918, § 5206, a mortgage on a manufacturing plant and fixtures, though it may cover some personal property, is valid and to be deemed a real estate mortgage, so that section 4803, as amended by Laws 1921, c. 118, excepting from the usury provision of section 4798 a bona fide mortgage on real property exceeding $500, applies.

4. **Usury 117—Must be established by more than mere inference by party asserting it.**

That a separate agreement of mortgagor, employing as a factor a firm, members of which were officers and stockholders of the mortgagee, was part of the same transaction as the mortgage, and a mere guise to conceal usury, must be established, and that too by something more than mere inference by the party claiming the mortgage usurious.

Appeal from the District Court of the United States for the District of Connecticut.

Mortgage foreclosure suit by M. Lowenstein & Sons, Inc., against the British-American Manufacturing Company and others. Decree for defendants (300 F. 853), and plaintiff appeals. Reversed, with directions.

Before HOUGH, MANTON, and HAND, Circuit Judges.

Myers & Goldsmith, of New York City, (Walter C. Noyes, Norman M. Behr, and Samuel J. Goldsmith, all of New York City, of counsel), for appellant.

Earle & Hoar, of New York City, Huxford & Spelke, of Stamford, Conn., and Foster & Morgan, of Bridgeport, Conn. (Henry M. Earle and Maxwell E. Lopin, both of New York City, of counsel), for appellees.

MANTON, Circuit Judge. Appellant, a New York corporation, has a capital of $3,000,000, divided into three classes of stock, and is engaged in the textile business and the financing of merchants in that line of business. A. L. & L. L. Lowenstein, who are stockholders and officers of the appellant, are engaged in the factoring business as copartners. Appellee is a Delaware corporation, and had a mill for rubberizing goods at Springdale, Conn. Receivers, who later resigned, were appointed for it in an equity proceeding, and on January 23, 1923, the present receiver, Harriette C. Brinkerhoff, was appointed. After negotiations between the president of the appellee company and the appellant, and with the approval of its board of directors, it executed its corporate mortgage on April 2, 1920, to secure a loan of $125,000, which sum appellant paid to it. The notes and mortgage were delivered in appellant's office in New York City. Advance payments amounting to $70,000 requested by the appellee, were made in March, and demand notes given. The balance, $55,000, was paid by check drawn on a New York bank and delivered to the appellee in New York City. The mortgage was authorized by the appropriate and unanimous action of the board of directors, including the present receiver, and a resolution thereof recorded in the minute

book of the corporation. The loan carried interest at 6 per cent. All the payments made by the appellant were used by the appellee for its corporate purposes. Interest payments were made on the mortgage from time to time. Prior to this loan, the appellee employed a firm in Boston to act as its factors. When this loan was made, it entered into a contract for such services with Lowenstein Bros., the copartnership. That agreement provided:

"The firm agrees to give and extend to the company such service, advice, and pecuniary assistance as, in its discretion, it may deem advisable for the term of six years from the 1st day of April, 1920, and ending and expiring on the 31st day of March, 1926, but the firm shall not be held liable, bound, or obligated to do or perform any act during the said period for the company, unless in the exercise of its discretion and judgment it may deem such act to be fit, prudent, and proper so to do, and in connection thereof the company agrees to pay to the firm a compensation or commission of 5 per cent. on the net sales of the entire products of the company's mill, which shall be ascertained by taking the invoice price of said sales, and deducting therefrom all trade discounts extended, and crediting against the same all returns allowed, deductions, offsets, allowances, cancellations of merchandise by the customers or parties to whom the said goods may or shall be sold or consigned.

"The company agrees to furnish and render to the firm, on the 16th day of each and every month during the said period, complete and accurate statements showing the net sales for the preceding month, and disclosing and including all trade discounts, claims, deductions, offsets, allowances, returns, and cancellations, and said statement shall be accompanied by the company's check for the said commissions and compensation of 5 per cent. aforesaid."

Additional payments were provided for by way of compensation running over a period of 6 years. Negotiations for the mortgage covered a period of 60 days. The mortgage was executed first, and on the same day the agreement with Lowenstein Bros. was executed. No part of the principal has been paid. The appellee has been successful in resisting the foreclosure suit below upon the claim that the mortgage was usurious under the Connecticut statutes (provisions of 1918, sections 4798, 4799, 4801, 4802, 4803 as amended by chapter 118 of the Laws of 1921), although due and authorized execution of the mortgage is found. The court below stated that the corporation was bound by the terms of the mortgage unless the defense of usury prevailed, and, after consideration of the Connecticut statutes which he applied to the facts, he found that the mortgage was usurious and void.

The claim of the appellee in support of this conclusion is that the corporation had been in a situation where advantage was taken of it by the connivance of the appellant and Lowenstein Bros.; that exorbitant interest was charged through the agreement of Lowenstein Bros. and by the instrumentality of the appellant. The mortgage calls for the payment of 6 per cent., but it is claimed that the appellant used Lowenstein Bros.' agreement for services as a mere cloak, and covered up the usurious charge. The argument proceeds that it is impossible to avoid the conclusion that the corporation was paying for the use of the money and not for any services that Lowenstein Bros. might possibly have decided to render. It is pointed out that the agreement to pay as salary a sum of money, which lasted while the loan decreased, amounted to about 2 per cent. of the loan, and, since the agreement and the mortgage were one transaction, it calculated upwards of 12 per cent. per annum. The pertinent sections of the Connecticut statutes are as follows:

"Sec. 4798. *Loans at Greater Rate than Twelve Per Centum Prohibited.* No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 3011, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor, interest at a rate greater than twelve per centum per annum."

And section 4803, which reads as follows:

"*Loans to Which the Preceding Sections Do Not Apply.* The provisions of sections 4798, 4799 and 4800 shall not affect any loan made prior to September 12, 1911, nor any loan made by any national bank or any bank or trust company duly incorporated under the laws of this state, nor any bona fide mortgage of real property exceeding the sum of five hundred dollars."

It appears from the foregoing statutes that no person in any capacity, shall make a loan to any person and charge or accept or make an agreement to receive therefrom interest at the rate of more than twelve per cent. per annum, but this provision has no application to a bona fide mortgage on real es-

tate which exceeds the sum of $500. We will assume that performance of this contract for a loan of money in the form of a bond and mortgage was to be performed by payment in the state of Connecticut, and that the Connecticut statute, because of this and because it is the law of the forum, is applicable. Cockle v. Flack, 93 U. S. 344, 33 L. Ed. 949.

[1-3] This mortgage is within the provisions of 4803, for it is a bona fide mortgage on real property exceeding the sum of $500. It was found below that the amount advanced was $125,000, and the instrument was authentic and validly executed. It may cover some chattels, but it has well covered real estate and fixtures, and must be deemed a mortgage on real estate. The agreement with Lowenstein Bros. was a separate instrument, and can only be considered with the mortgage in testing the question of a usurious transaction. It could not affect the bona fide character of the mortgage transaction. There is no fraud or illegality proven, and the only effort to show infirmity in the mortgage depends upon the charge of usury. At best for the appellee the Lowenstein Bros. contract could be considered a plan to secure illegal interest, but the statute (section 4803) is plain that, if the mortgage be over $500, section 4798 has no application. Bona fide in its accepted meaning is good faith without fraud or deception; that is, good faith and honesty as distinguished from bad faith. Ware v. Hylton, 3 Dall. 241, 1 L. Ed. 568. The learned district judge considered the Lowenstein Bros. agreement for service as an additional payment of interest, holding that it was but a cloak to add interest to the 6 per cent. interest contained in the mortgage. Assuming that it may be so determined, and that by such a consideration the rate of interest was increased above 12 per cent., still that would not affect the bona fide character of the mortgage. It would therefore be immaterial, since the amount is more than $500, whether or not Lowenstein Bros.' contract was connected with it as a means to avoid the usury statute. At all times it was a $125,000 mortgage, and that amount was paid. It is not argued that anything in the making of or in the contract of Lowenstein Bros. constitutes a scheme to defraud or invalidates the mortgage other than through the claim of usury. The contract is in no way security for the mortgage, nor is it secured in any way by the mortgage. Usury cannot be established unless there be shown a definite agreement to pay, in any event, an amount in excess of the legal rate of interest, and where, as here, the legal rate of interest is less, an agreement to pay additional sums which may or may not make the amount greater, would not of itself render the transaction usurious. A contract to violate the 12 per cent. usury statute of Connecticut, must require the payment of more than 12 per cent. per annum by its terms.

It appears from the mortgage that personal property may be deemed to be covered by it. An examination of the reports of Connecticut show a policy of that state against usual chattel mortgages and provision for the essentially real estate mortgages in the manufacturing and mechanical establishments. Gen. St. § 5206, provides:

"Sec. 5206. *Certain Chattel Mortgages Good Without Possession.* When any manufacturing or mechanical establishment, together with the machinery, engines or implements, * * * cases, types, cuts or plates situated and used therein; * * * shall be mortgaged by a deed containing a condition of defeasance, and a particular description of such personal property, executed, acknowledged and recorded as mortgages of lands, the retention by the mortgagor of the possession of such personal property shall not impair the title of the mortgagee. When such personal property shall be mortgaged together with the real estate such mortgage may be foreclosed as if wholly of real estate. * * * *"

This statute permits certain fixed personal property, such as machinery in a mill, to be mortgaged without a change of possession. The mortgages are to be treated as mortgages of land and to be foreclosed as if wholly of real estate. Here the major security is real estate, it will be regarded as a real estate mortgage for the purpose of considering its security, validity, or procedure in foreclosure.

[4] Nor do we think that Lowenstein Bros.' agreement was in any way or in any sense an expression of the real terms of the mortgage. The instruments were separately executed and acknowledged, imposing distinct obligations on the parties. They were each authorized by corporate action. Why it should be regarded as a secret agreement is not established by the evidence. There is no reason why it should have been. It calls for services desired by the appellee, as it had previously received from the Boston firm. It in no way created further security for the $125,000 which was loaned.

Any defense of usury must be based upon the theory that the mortgage and the employment agreement were part of one transaction and that the latter was a mere guise to conceal a further consideration for the loan. This was recognized below, and the court added that in addition, it was necessary to show a secret agreement, but there was no evidence to warrant such a conclusion. The agreement for services was independent of the mortgage and based upon a valid consideration. It stands unimpeached and independent of the mortgage. The burden of establishing this claim was upon the appellee, and it may not be established by mere inference. Houghton v. Burden, 228 U. S. 161, 33 Sup. Ct. 491, 57 L. Ed. 780; White v. Benjamin, 138 N. Y. 623, 33 N. E. 1037; Wood v. Babbitt (C. C.) 149 F. 822; Shotwell v. Dixon, 163 N. Y. 43, 57 N. E. 178.

The court below granted affirmative judgment in favor of the appellee for the moneys which had been paid as interest during the period the lien was recognized. Concluding, as we do, that the mortgage is valid and enforceable as against the appellee's property, it necessarily follows that the decree awarding this affirmative relief must fall.

The decree below is reversed, with direction to enter a decree of foreclosure.

Decree reversed.