MODERN FINANCE COMPANY *vs.* BERTRAM I. HOLZ.

Middlesex.   May 14, 1940. — November 15, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Bills and Notes*, Validity.   *Small Loans.   Usury.   Statute*, Construction.

A transaction, whereby a seller of automobiles assigned and indorsed to a finance company not licensed under the small loans statute, G. L. (Ter. Ed.) c. 140, §§ 96–114, as amended, the purchaser's conditional sale contract and an attached note, payable in fifteen monthly payments, and received from it a sum less than $300, was within the scope of the statute; and, since the difference between the sum so received and the face of the note was at a rate more than twelve per cent per annum of the amount so received, the finance company was barred by § 110 from recovering on the note against the seller.

Administrative practice is not to be considered in construing an unambiguous statute.

CONTRACT. Writ in the Third District Court of Eastern Middlesex dated September 7, 1939.

The case was heard by *Walcott*, J.

*S. T. Lakson*, for the plaintiff.

*W. H. Coogan, Jr.*, for the defendant.

DOLAN, J. This is an action of contract to recover in two counts on two promissory notes. The answer is a general denial and a plea "that the contracts and notes alleged . . . in each of . . . [the] counts are illegal and void and are in violation of the General Laws of Massachusetts relating to small loans." The judge found for the defendant on each count, and the case now comes before us on the plaintiff's appeal from the order of the Appellate Division dismissing the report.

There was evidence tending to show the following facts. The plaintiff is a corporation organized under G. L. (Ter. Ed.) c. 156. It is not a loan company or association established by special charter, or a fraternal mutual benefit society. It is not licensed to conduct the business of making small loans. The defendant is an automobile dealer.

On or about September 21, 1938, the defendant entered into a contract with one Curley, wherein the defendant agreed to sell and Curley agreed to buy a certain second-hand automobile for the total cash selling price of $365 plus a "Time Payment Charge" of $85, i.e. a total price of $450, of which there was to be a down payment of $125, and fourteen monthly payments of $22, plus a final payment of $17. Attached to this contract was a negotiable note which Curley executed payable to the defendant in the amount of $325, the note being payable in the manner referred to above. The defendant immediately indorsed the note. The material parts of such indorsement follow: "For Value Received Pay to the Order of Modern Finance Company     Signed Bertram I. Holz     Dealer." On the same day the defendant executed to the plaintiff a "dealer's assignment" of the contract and of all right, title, and interest in the vehicle, which recited in part that the amount secured by the contract was not more than seventy-five

per cent of the sale price of the vehicle. At the head of the paper containing the contract the following words appeared in bold type: "Modern Finance Company (Not the seller herein)    Conditional Sale Contract."

On or about September 28, 1938, the defendant entered into a similar contract with one Hadad for the sale by the former to the latter of a certain used automobile for the sum of $315, the cash selling price, plus a "Time Payment Charge" of $75, making a total time or credit price of $390. Under the "Schedule of Payments" Hadad was credited with an "Allowance on Trade In" of $115. The balance of $275 was to be paid in fourteen equal monthly payments of $18, plus one payment of $23. In this transaction, as in that with Curley, the balance due is denoted as "Evidenced by Purchaser's Promissory Note of this date bearing interest from maturity at highest lawful rate. (Not as payment but as evidence of the amounts to become due hereunder.)" As in the transaction with Curley, the note was attached to the contract and executed by the buyer, Hadad, payable in the aforementioned instalments to the defendant, who indorsed it at once to the plaintiff, and at the same time executed an assignment of the contract and of title to the vehicle to the plaintiff.

In the Curley transaction the defendant received from the plaintiff two checks, one in the amount of $240, and the other in the amount of $15. In the Hadad transaction the defendant received from the plaintiff two checks, one for $200, and the other for $15. The amounts of all these checks were collected by the defendant, who testified at the trial that each of the $15 checks was a bonus, and that the plaintiff had supplied him with a card headed "Modern Finance Company . . . Convenient Time Payment Plan," which set forth a table of unpaid balances, compared with the amounts of notes and the instalments payable thereon, and calculated with reference to periods of twelve, fifteen, and eighteen months. The president and treasurer of the plaintiff corporation testified that its business consists of buying conditional bills of sale, and that in its behalf he purchased from the defendant for $215 and $255 respec-

tively the two conditional bills of sale in question, to which were attached the respective notes.

The plaintiff eventually took possession of each automobile for nonpayment of the instalments provided for in the conditional bills of sale, sold each vehicle, and credited the net selling price thereof on account of the respective contracts.

At the close of the trial the plaintiff made several requests for rulings including the following: "The transaction[s] between the parties . . . [do] not come within the provisions of G. L. c. 140, §§ 96 to 114, inclusive. . . . The transaction[s] between the parties involved . . . [are] not in violation of any of the provisions of G. L. c. 140, §§ 96 to 114." The judge denied all of the plaintiff's requests and found for the defendant. The plaintiff claimed to be aggrieved by these refusals and the judge reported the case to the Appellate Division, which ordered the report dismissed.

The only issue argued by the parties is whether the transactions in question between the parties are in violation of G. L. (Ter. Ed.) c. 140, §§ 96–114.

Section 96, as amended by St. 1934, c. 179, § 2, so far as pertinent provides as follows: "No person shall directly or indirectly engage in the business of making loans of three hundred dollars or less, if the amount to be paid on any such loan for interest and expenses exceeds in the aggregate an amount equivalent to twelve per cent per annum upon the sum loaned, without first obtaining from the commissioner of banks . . . a license to carry on the said business in the town where the business is to be transacted. . . . The buying or endorsing of notes or the furnishing of guarantee or security for compensation shall be considered to be engaging in the business of making small loans within said sections. . . . If, after all deductions or payments, whether on account of interest, expenses or principal made substantially contemporaneously with the making of the loan, the amount retained by the borrower be three hundred dollars or less, the transaction shall be deemed to be a loan in the amount of the sum so retained by the borrower

after such deductions or payments, notwithstanding that the loan be nominally for a greater sum." Section 110 provides in part that "Any loan made or note purchased or endorsement or guarantee furnished by an· unlicensed person in violation of said sections [96–111, inclusive] shall be void."

In *Cuneo* v. *Bornstein*, 269 Mass. 232, 236, it is said: "The purpose of the small loans act was to prohibit the unlicensed business of making small loans and to prevent an excessive rate of interest on such loans. The statute was passed as a protection to the borrower; it was intended to make the statute effective and to prevent its evasion by indorsing notes given for such loans to third parties. . . . In our opinion the word 'void' was used in its technical sense . . . ."

The plaintiff, however, contends that the provisions of §§ 96–114, inclusive, apply only to the business of making small loans, not to time sales financing; and that the contracts, not the notes, were the subject matter of the sales by the defendant to the plaintiff. In support of its contention the plaintiff cites cases from many jurisdictions in which it has been held that such transactions are not within the purview of small loan laws or general usury laws. Among the cases cited are *General Contract Purchase Corp.* v. *Holland*, 196 Ark. 675; *Dunn* v. *Midland Loan Finance Corp.* 206 Minn. 550; *Commercial Credit Co.* v. *Tarwater*, 215 Ala. 123; *Coast Finance Corp.* v. *Powers Furniture Co.* 105 Ore. 339; *Cady L. Daniels, Inc.* v. *Fenton*, 97 Colo. 409. These and cases in many other jurisdictions hold that usury laws and small loan laws cover loans only, and that sales at higher prices and indorsements and assignments at high discounts, where not mere shams, are sales and not loans and therefore do not come within either the letter or the spirit of such laws. See Williston, Contracts (Rev. ed.) § 1685.

The statutes in the jurisdictions where the cases relied upon by the plaintiff were decided do not, however, contain the provisions of G. L. (Ter. Ed.) c. 140, § 96, as amended, that "The buying or endorsing of notes or the furnishing

of guarantee or security for compensation shall be considered to be engaging in the business of making small loans within said sections" (96–111, inclusive). The statutes of the other jurisdictions speak in general terms of the loan, use or forbearance of money, goods or things in action or the loan, use or sale of credit.

The small loans act was first enacted in this Commonwealth by St. 1898, c. 577. The provisions of G. L. (Ter. Ed.) c. 140, § 96, relating to the "buying or endorsing" of notes were not contained in St. 1898, c. 577, or in St. 1908, c. 605, § 1, or in St. 1911, c. 727, but were added by St. 1912, c. 675, § 2, and are now contained without material change in G. L. (Ter. Ed.) c. 140, § 96, as amended.

We are of opinion that the transactions in question come within the purview of § 96 and that they are in violation thereof. It is apparent from the record that the plaintiff bought from the defendant the notes involved and looked upon them as something substantial in and of themselves and not as mere evidence of some other right. The present action is brought to recover on the notes. It is also plain that the amount exacted from the defendant by the plaintiff in connection with the purchase of each of the notes "exceeds in the aggregate an amount equivalent to twelve per cent per annum" (§ 96), and that the amount retained by the defendant in each case was less than $300.

The plaintiff further relies upon statements made by the supervisor of loan agencies in his reports for the years 1928 and 1936 (Public Documents [1928] No. 95, page 4; [1936] No. 95, page 7). In the report for the year 1928 the supervisor stated that instalment automobile financing plans do not fall within the provisions of c. 140, §§ 96–114, inclusive; and in the report for the year 1936 he stated that a commission recommended to the Legislature the passage of an act providing for the licensing of automobile and other instalment financing agencies, and that the proposed act failed of passage in both branches of the Legislature. The plaintiff also brings to our attention an opinion of the Attorney General (8 Op. Atty. Gen. 528), to the effect that certain plans for financing automobile and fire insur-

ance premiums, "where the amounts are $300 or under" do not relate to "'loans,' within the meaning of G. L., c. 140, §§ 96–114, but are in the nature of agreements for the extension of credit for policies of insurance actually purchased by the maker of the notes . . . ." There was nothing, however, in the plans submitted to the Attorney General that called for any opinion as to the subsequent "buying or endorsing" of notes. The plans merely provided for the giving of notes in the first instance to secure the payment of the premiums.

With relation to the reports of the supervisor of loans to which the plaintiff has referred, while it is settled that "in the interpretation of a doubtful or ambiguous statute the long continued and uniform practice of the authorities charged with its administration is entitled to great weight and will not be disturbed," *Powers's Case,* 275 Mass. 515, 518, and cases cited; *DeBlois* v. *Commissioner of Corporations & Taxation,* 276 Mass. 437, 440; *Mullen* v. *Sewer Commissioners of Milton,* 280 Mass. 531, 536; it is also settled that this "rule cannot be invoked against the plain words of a statute." *Allen* v. *Commissioner of Corporations & Taxation,* 272 Mass. 502, 509. In the case last cited it is also said at page 508: "Other information than that afforded by the words of the statute can be examined only to aid in the solution of an ambiguity. We can only interpret the words of the statute: we cannot speculate as to the probable intention of the Legislature apart from those words." See also *Commonwealth* v. *Gardner,* 300 Mass. 372, 375.

The words of § 96 governing the present case are not ambiguous. They are plain and apply to the transactions involved in which the plaintiff bought the notes in violation of the provisions of c. 140, §§ 96–114, inclusive, and under § 110 the notes are void.

*Order dismissing report affirmed.*[1]

---

[1] See now St. 1941, c. 158. — REPORTER.