UNI-SERV CORPORATION OF MASSACHUSETTS *vs.*
COMMISSIONER OF BANKS.

Suffolk. March 3, 1965. — June 8, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Small Loans. Time Sales Financing.*

A concern was not engaged in the business of making small loans within G. L. c. 140, § 96, as appearing in St. 1962, c. 795, § 1, by reason of conducting a retail credit card business whereby the concern issued credit cards entitling a holder to make credit purchases at participating stores for which he signed sales slips providing for his paying either the seller stores or an assignee in accordance with a "Consumer's Agreement" appearing thereon, the sales slips were delivered to the concern and by such delivery the accounts receivable evidenced by the slips and the sellers' rights under the "Consumer's Agreement" were assigned to the concern, and thereafter the concern billed the cardholder for his purchases pursuant to the "Consumer's Agreement," which required him to pay certain service charges on any part of the amount billed not paid within a specified time after the billing.

BILL IN EQUITY for declaratory relief filed in the Superior Court on September 3, 1964.

The suit was heard by *Sullivan, J.,* on a statement of agreed facts, and was reported by him.

*Stephen W. Howe* (*Herbert G. Taylor* with him) for the plaintiff.

*David W. Hays,* Assistant Attorney General, for the defendant.

SPALDING, J.   The plaintiff (Uni-Serv), a Massachusetts corporation, is engaged in the retail credit card business. The business is conducted as follows: Persons desiring to be cardholders apply to Uni-Serv on a form supplied by it. Applicants who are approved receive a credit card which identifies them as cardholders; they also receive an agreement signed by Uni-Serv, which is a copy of that contained in the application form.   The card permits the holder to make credit purchases at stores participating in the Uni-Serv plan, subject to a limit fixed by Uni-Serv on the aggregate amount of the cardholder's indebtedness at any one time.

Retailers wishing to participate in the plan enter into a "Member Agreement" with Uni-Serv which provides for the purchase by Uni-Serv of accounts receivable created through purchases by cardholders.   Under the agreement a member store is furnished a "Member Operating Guide" and a "Member Discount and Fee Chart."

A cardholder, after selecting his merchandise, presents his card to the member store.   The store fills out a sales slip which the cardholder signs.   The sales slip contains an agreement by the cardholder to pay either the seller or the assignee of the sales slip in accordance with the "Consumers' Agreement" on the reverse side.

After the sales slip has been signed and the merchandise together with a copy of the slip has been given to the cardholder, the member store delivers its copy of the slip to Uni-Serv.   The delivery of the sales slip to Uni-Serv constitutes an assignment of the account receivable evidenced by the slip and obligates Uni-Serv to pay to the member store the amount of such account less an agreed discount.

Uni-Serv, as assignee of the account, acquires the rights of the member store set forth in the "Consumers' Agreement."

The cardholder receives a monthly statement from Uni-Serv in which all purchases made by him under the Uni-Serv plan are consolidated. The cardholder's liability to pay this bill is governed by the "Consumers' Agreement" under which he is obligated to pay service charges to the extent therein provided on such portions of the bill as are not paid on or before twenty-four days after the billing date.[1] Prepayments in part or in full may be made at any time without charge or penalty.

The commissioner of banks has notified Uni-Serv that the continued operation of its credit card business in the Commonwealth is a violation of G. L. c. 140, §§ 96-114, because it does not have a license to engage in the business of making loans of the sort governed by those sections. Uni-Serv has brought this bill for declaratory relief to determine whether it may lawfully engage in the credit card business outlined above without the license required by §§ 96-114.[2] The case was submitted on a statement of agreed facts, and the judge reported it without decision. G. L. c. 214, § 31.

The sole issue is whether Uni-Serv is engaged "in the business of making loans of three thousand dollars or less" within the intendment of § 96. We are of opinion it is not.

---

[1] The service charges set forth in the "Consumers' Agreement" are "1½% per month on so much of said balance as does not exceed $500, 1% per month on excess of $500 of said balance, with a minimum of 35¢ for any month."

[2] General Laws c. 140, § 96, reads in relevant part: "No person shall directly or indirectly engage in the business of making loans of three thousand dollars or less, if the amount to be paid on any such loan for interest and expenses exceeds in the aggregate an amount equivalent to twelve per cent per annum upon the sum loaned, without first obtaining from the commissioner of banks . . . a license to carry on the said business in the town where the business is to be transacted. . . . The buying or endorsing of notes or the furnishing of guarantee or security for compensation shall be considered to be engaging in the business of making small loans . . . but the foregoing provisions of this sentence shall not apply in the case of any transaction which involves any note or other instrument evidencing the indebtedness of a buyer to the seller of goods, services or insurance for a part or all of the purchase price."

Under our decisions a distinction has been drawn between the making of small loans and time sales financing. Despite the fact that the financing of a purchase involves the extension of credit, and ordinarily a charge for such credit, the arrangement has not been considered to be a loan. *Parker* v. *Coburn,* 10 Allen, 82. *Hayes* v. *Commissioner of Corps. & Taxn.* 261 Mass. 134. The theory was that everything the buyer promised was consideration for the sale of property, not interest on a loan. Williston, Contracts (Rev. ed.) § 1685.

This distinction has been maintained in interpreting small loan statutes. See *Day* v. *Cohen,* 165 Mass. 304, 305 (statute governing the mortgaging of household furniture to secure a loan). In construing G. L. c. 140, § 96, this court recognized that there was much authority to the effect that "usury laws and small loan laws cover loans only, and that sales at higher prices . . . [due to finance charges] where not mere shams, are sales and not loans." *Modern Fin. Co.* v. *Holz,* 307 Mass. 281, 285. See Annual Report of the Supervisor of Loan Agencies, 1936 Pub. Doc. No. 95, p. 7. Nevertheless, the commissioner urges that the existence of an agreement between the cardholder and Uni-Serv changes the character of the transaction. We disagree.

The Uni-Serv plan is essentially a time sales financing arrangement in which credit is extended for the sole purpose of purchasing goods or services from stores participating in the plan. There is no way in which a cardholder can use the plan so as to receive a cash loan. If he purchases goods and then returns them, the member store is expressly prohibited from giving him cash. All the buyer receives is a credit to his Uni-Serv account. Of course a cardholder could sell the goods so purchased, but this would be true of any time sales financing in which a seller or his assignee did not retain a security interest in the goods sold. The fact that the ultimate creditor is Uni-Serv and not the seller of the goods or services is likewise of no consequence. This, we think, is made clear by an analysis of the development of § 96 and its judicial interpretation.

In 1912 what is now § 96 was amended by the insertion of the following provision: "The buying or endorsing of notes, or the furnishing of guarantee or security for compensation shall be considered to be engaging in the business of making small loans within the provisions of this act." St. 1912, c. 675, § 2. In *Modern Fin. Co.* v. *Holz,* 307 Mass. 281 (decided in 1940) it was held that under this provision a finance company in the business of purchasing from automobile dealers notes executed by purchasers was in the business of making small loans, and therefore subject to the provisions of §§ 96–114. But in 1941, § 96 was again amended by adding an important qualification to the 1912 amendment. The 1912 amendment was no longer to apply ". . . in the case of any transaction which involves any note or *other instrument* evidencing the indebtedness of a buyer to the seller of goods, services or insurance for a part or all of the purchase price" (emphasis added). St. 1941, c. 158, § 1.[1]

We are of opinion that this legislative pattern indicates an intent to exempt from the small loans provisions of §§ 96–114 time sales financing notwithstanding the fact that the instruments evidencing the debt (in this case a signed sales slip containing the "Consumers' Agreement") are assigned to a third party.

A declaratory decree in accordance with this opinion may be entered.

*So ordered.*

---

[1] The *Holz* decision evoked the following comment: "The result of . . . [the *Holz* case] will probably be the immediate passage of legislation designed to place the time payment financing of conditional sales involving automobiles, furniture and the like on a plane separate from other loan transactions." Note, 21 B. U. L. Rev. 125, 132.