**Alan J. WHITE, Appellant,**

v.

**CENTRAL CHARGE SERVICE, INC.,
Appellee.**

No. 5918.

District of Columbia Court of Appeals.

Argued Oct. 29, 1971.

Decided Dec. 29, 1971.

Rehearing and Rehearing En Banc
Denied March 31, 1972.

Alan J. White, pro se.

Theodore Kligman, Washington, D. C., for appellee.

Before KERN, PAIR and REILLY, Associate Judges.

PAIR, Associate Judge.

Appellant complained against Central Charge Service, Inc. (referred to herein as "Central Charge"), in the Small Claims and Conciliation Branch of the Superior Court of the District of Columbia, seeking to recover the $100 civil penalty prescribed by Section 130(a) (1) of the Truth in Lending Act,[1] (referred to herein as the "Act"), 15

1. § 130.   Civil liability
     (a)   Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person
any information required under this chapter to be disclosed to that person is liable to that person in an amount equal to the sum of

U.S.C. § 1640(a) (1970). The specific complaint was that Central Charge failed to disclose in its monthly statement of appellant's account rendered April 28, 1970, the information required by the Act in a consumer credit transaction.

At the trial there was no substantial dispute as to the facts. Central Charge was the creditor under an open end consumer credit plan. Wheaton Plaza Hi Fi, Inc. of Wheaton, Md. (referred to herein as the "seller") was a merchant participant in the plan. On April 4, 1970, appellant purchased from the seller a stereo changer, the price of which, according to the bill of sale and the charge slips signed by appellant, was $144.45, to which was added a state tax of $5.78, representing a total cost to appellant of $150.23. In the usual course of business under the open end consumer credit plan, the seller called Central Charge by telephone and arranged for the extension of credit to appellant in the amount of $150.23. Appellant then signed the bill of sale and the charge slip and, in its statement of appellant's account rendered April 28, 1970, Central Charge included a charge of $150.-23.

Appellant's version of the transaction was that the seller quoted him a price of $135 for the stereo changer which he agreed to pay. When, however, appellant exhibited his Central Charge card, he was informed by the seller that the price he had been quoted was a cash price and that if he wanted to use his Central Charge card he would have to pay an additional 7%. Appellant's testimony was that he agreed, whereupon 7% of the quoted price of $135 (or $9.45) was added and he signed a bill of sale and charge slip which reflected a

purchase price of $144.45 to which was added the sales tax of $5.78.

Appellant testified further that when he received the statement of his account rendered by Central Charge April 28, 1970, he observed the item of $150.23 and observed also that the 7% finance charge added by the seller to the purchase price was not reflected anywhere in the statement. Appellant conceded, however, that there was no indication on the face of either the bill of sale or the charge slip that any finance charge was included in the amount of $144.45 which was represented as the purchase price, and conceded also that Central Charge was not informed at the time of its April 28, 1970, statement that any such finance charge was included in the purchase price.

At the completion of all the evidence, the trial court concluded that the Truth in Lending Act, *supra*, as implemented by Federal Reserve Regulation Z, 12 C.F.R. § 226 (1971), imposed no responsibility upon Central Charge to disclose information respecting any finance charge added to the purchase price by the seller of which it (Central Charge) was not informed. The court, therefore, dismissed the complaint saying that appellant had not sued the proper party.

This court allowed an appeal to consider the construction and application of the Act and its implementing regulation to the consumer credit transaction here involved. Convinced now that no question of substance is presented, we affirm.

Appellant contends, and with particular reference to 12 C.F.R. § 226.7(d),[2] that because the seller failed to disclose the

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000 . . . .

**2.** (d) *Finance charge imposed at time of transaction.* Any creditor, other than the creditor of the open end credit account, who imposes a finance charge

at the time of honoring a customer's credit card . . . shall make the disclosures required under paragraphs (b) (2) and (d) of § 226.8. . . . *If disclosure is made under this paragraph, the creditor of the open end credit account need make no further disclosure with respect to the finance charge on that transaction.* [Emphasis supplied.]

finance charge it added to the purchase price, expressed as an annual percentage rate, Central Charge was required to make such disclosure and that its failure to do so subjected it to the civil penalty prescribed by Section 130 of the Act, *supra*.

Appellant, of course, by his own admission, was fully informed by the seller of the finance charge it had imposed and appellant thereafter determined for himself the annual percentage rate. While this fact, without more, would not relieve Central Charge of any responsibility it might have under Section 127 of the Act,[3] it does give added significance to appellant's concession that Central Charge, at the time of its statement of April 28, 1970, was without knowledge or information respecting the finance charge imposed by the seller. Moreover, there is no assertion that Central Charge itself added any finance charge to appellant's account during the billing cycle involved.

■ Contrary to appellant's theory, it does not appear that Section 127(b) requires the open end creditor to break down the individual items charged to the debtor's account. Such as the actual purchase price of the merchandise and the finance charge, if any, imposed by the retail or service establishment where the credit card was used. In our opinion, what was intended by this subsection was to compel the open end creditor to include in its statement of the obligor's account any finance charge it imposed by reason of "an outstanding balance in that account." Appellant would have us read paragraph (4) of that subsection as referring to a finance charge made by an individual vendor, rather than one imposed by the open end creditor, but such a construction would be inconsistent not only with the opening sentence of Section 127(b) but also with paragraphs (5), (6), (8) and (10) of that subsection, where the term "finance charge" is also used.

While it is true that the language employed in paragraph (4) is "any finance charge," we think it clear that the term as there employed and as employed in paragraphs (5), (6), (8) and (10) must be read in the light of and governed by the opening sentence of subsection (b). There the term "finance charge" clearly refers to the finance charge imposed by an open end creditor in respect to an outstanding balance in the open end account. Such was clearly the intention of the framers of Section 127(b). The construction urged upon us by appellant, if adopted, would impose upon an open end creditor responsibility for the derelictions under Section 128 of the Act, of every vendor participating in an open end credit plan. That the Congress could not have intended any such result seems almost too clear for discussion.

But, aside from the asserted ambiguity in Section 127(b), in 12 C.F.R. § 226.6 it is provided in language that is crystal clear that:

(d) *Multiple creditors; joint disclosure.* If there is more than one creditor in a transaction, each creditor shall be clearly identified *and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer.* . . . [Emphasis added.]

■ We hold therefore on this record that Section 127(b) of the Act, *supra*, im-

3. (b) The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

. . . . .

(4) The amount of any finance charge added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates and the amount, if any, imposed as a minimum or fixed charge.

posed no responsibility upon Central Charge to disclose in its statement of appellant's account, dated April 28, 1970, the finance charge added to the purchase price by the seller.[4]

Affirmed.

4. We have examined the case of Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270 (S.D.N.Y.1971), called to the court's attention by appellant following oral argument, and find no support therein for his position.