## MAINE MERCHANTS ASSOCIATION, INC., et al.

v.

## Elmer W. CAMPBELL.

Supreme Judicial Court of Maine.

Feb. 16, 1972.

Pierce, Atwood, Scribner, Allen & Mc-Kusick by Jeremiah D. Newbury, Gerald M. Amero, Daniel E. Boxer, Portland, for plaintiffs.

Clayton N. Howard, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

This complaint for a declaratory judgment, injunctive relief and review of the Bank Commissioner's Order under the provisions of 80B, Maine Rules of Civil Procedure, is before us on report.

The factual issues have been resolved by an agreed statement of facts. We are asked to *"render such decision as the rights of the parties require."*

The plaintiff, Maine Merchants Association, Inc., is a non-profit corporation organized without capital stock. Some 400 retail merchants through the State of Maine constitute the members.[1]

---

1. Although the defendant moved to dismiss the action as to Maine Merchants Association, Inc., on the ground this plaintiff is not affected by the Commissioner's Order, the motion has not been pressed. We find it unnecessary to discuss the issue here.

Plaintiff Porteous, Mitchell & Braun Company is a corporation operating a general department store in the City of Portland.

Plaintiff A. H. Benoit & Company is likewise a corporation operating retail stores in Portland, Lewiston, Brunswick and Ogunquit.

Plaintiff Sears, Roebuck and Company is a New York corporation, qualified as a foreign corporation under 13 M.R.S.A. § 592. This corporation is engaged in the general retail business throughout the United States and owns and operates retail stores in Presque Isle, Bangor, Rockland, Waterville, Augusta, Lewiston, Brunswick and Portland, all in Maine.

The defendant is the Bank Commissioner of the State of Maine.[2]

The agreed statement dates the birth of the controversy as March 19, 1971, when the then Bank Commissioner issued his *"Ruling 1971–l"* and a press release.[3]

The Commissioner's position is that the revolving charge accounts constitute a violation of 9 M.R.S.A. § 3086 which reads as follows:

*"No person, copartnership or corporation, except as authorized by chapters 281 to 289, shall, directly or indirectly, charge, contract for or receive any interest or consideration greater than 12% per year upon the loan, use or forbearance of money, goods or choses in action, or upon the loan, use or sale of credit, of the amount or value of $2,500 or less. This prohibition shall apply to any person who, as security for any such loan, use or forbearance of money, goods or choses in action, or for any such loan, use or sale of credit, makes a pretended purchase of property from any person and permits the owner or pledgor to retain the possession thereof, or who, by any device or pretense of charging for his services, or otherwise, seeks to obtain a greater compensation than is authorized by chapters 281 to 289."*

The question we must decide becomes: Does 9 M.R.S.A. § 3086 apply to the sale of merchandise on credit pursuant to the revolving charge account plans of the plaintiffs?

The agreed statement of facts establishes plaintiff Sears, Roebuck and Company has for some 15 years used revolving charge account plans with a periodic charge of $1\frac{1}{2}\%$ per month.

---

2.  Subsequent to the commencement of the suit defendant Elmer W. Campbell was succeeded in office by Robert A. Brown. This event was noticed by plaintiffs and an order of substitution was appropriately entered pursuant to the provisions of Rule 25(d) (1) Maine Rules of Civil Procedure.

3.  The full text of the ruling is as follows:
    *"Commissioner's Ruling 1971–1*
      *Firms are extending credit in this State in relation to the sale of goods and services pursuant to charge account plans, which plans are commonly referred to as revolving charge account plans.*
      *The cash prices of the goods and services are added to the accounts and periodic finance charges are assessed as a percentage of all, or a portion of, the unpaid balances of the accounts.*

*Title 9, Section 3086 of the Maine Revised Statutes Annotated, provides in pertinent part, as follows:*
'No person, copartnership or corporation, except as authorized by chapters 281 to 289, shall, directly or indirectly, charge, contract for or receive any interest or consideration greater than 12% per year, said interest rate to be computed on the basis of what is known as a true interest rate, upon the loan, *use or forbearance of money, goods* or choses in action, or upon the *loan, use* or *sale of credit*, of the amount or value of $2,000 or less. This . . .' (Emphasis supplied.)
RULING: *The above mentioned charges constitute interest within the meaning of section 3086. The effective date of this ruling is July 1, 1971.*
[seal]        *s/ Elmer W. Campbell*
              *Elmer W. Campbell—*
              *Bank Commissioner"*
*Dated: March 19, 1971*

Although the other plaintiffs have used such plans for a lesser period of time than Sears, the parties agree the plans of all the plaintiffs are substantially similar.

In all cases, prior to use of a revolving charge account, a customer must make application for credit and enter into a revolving charge account agreement. Approval or disapproval of the application of a customer of the plaintiffs for a revolving charge account is based on the customer's past credit history and his ability to pay.

A revolving charge account customer of the plaintiffs may purchase merchandise for cash at the cash price stated on the sales check, plus sales tax, or may charge such amounts to his revolving charge account, in which case all of the contractual rights and responsibilities of the parties are governed by the revolving charge account agreements.

The disclosure statements, required to be furnished to their customers by the plaintiffs under Regulation 6 of the State Department of Banks and Banking, promulgated pursuant to 9 M.R.S.A. § 3905, are furnished by the plaintiffs to their customers at the time of the execution of the revolving charge account agreement.

These disclosure statements disclose certain rights and responsibilities of the parties and the finance charge as required by subsection 1, section 7, of Regulation 6.

It is agreed that in the case of all plaintiffs the periodic rate of finance charge of 1½% per month exceeds an annual percentage rate of 12% a year. In the case of Sears, the finance charges billed to customers under their revolving charge agreements are carried under the heading of service charges and the finance charges due from customers' closed-end retail instalment sales contracts are carried on the books of Sears under the heading *"carrying charges."*

In the case of Porteous, finance charges billed to revolving charge customers and due from closed-end instalment contract customers are both carried under the heading *"interest and carrying charges."*

In the case of Benoit's, finance charges are carried under the heading *"budget account—service charge."*

In the case of all of the plaintiffs, upon purchasing merchandise under a revolving credit account the customers may obtain immediate possession[4] of the merchandise.

■ The Bank Commissioner is a person expected to possess expertise in the field of banking. Within the limitations provided by the various statutes he is called upon to administer, he frequently has occasion to make findings of fact. When his factual conclusions are within the realm of his acknowledged expertise, great deference must be given his conclusions by a reviewing Court.

■ However, in the instant case his conclusion was not one of fact.

Rather his ruling was that 9 M.R.S.A. § 3086 applied to plaintiffs' revolving charge accounts.

This was a conclusion of law.

The problem before us is not to resolve the broad policy question: Should the revolving charge accounts be made subject to regulation? But rather the question is one of statutory interpretation.

The very narrow issue we have for decision is: Are revolving charge accounts intended to be regulated by 9 M.R.S.A. § 3086?

Maine does not have a general usury statute. If such accounts are subject to regulation at all, they perforce must be regulated by 9 M.R.S.A. § 3086.

---

4. All plaintiffs allow the customer to obtain immediate title to the merchandise except plaintiff Sears, Roebuck and Company. Sears' contract purports to retain title in Sears until the full purchase price is paid.

We are aware revolving charge accounts, not unlike the ones before us, have been the subject of considerable litigation.

The most recent case which has come to our attention is Rollinger v. J. C. Penney Co., Inc., 192 N.W.2d 699 (1971), decided by the South Dakota Supreme Court.

Just prior to that, the Supreme Court of New Jersey ruled in Sliger v. R. H. Macy & Co., 59 N.J. 465, 283 A.2d 904 (1971). Among the many other cases which have come to our attention are, State of Wisconsin v. J. C. Penney Co., 48 Wis.2d 125, 179 N.W.2d 641 (1970); Dennis v. Sears, Roebuck & Co., 223 Tenn. 415, 446 S.W.2d 260 (1969); Uni-Serv Corp. of Mass. v. Commissioner of Banks, 349 Mass. 283, 207 N.E.2d 906 (1965).

While all these cases are helpful, none of them can be considered exactly in point.

9 M.R.S.A. §§ 3001–3162 was first enacted by Chapter 298 of the Public Laws of 1917. Section 13 of the 1917 Act provided as follows:

"*Sec. 13. Interest rate greater than twelve per cent annually, except as herein provided, prohibited; attempted evasion by pretended purchase. No person, copartnership or corporation except as authorized by this act shall, directly or indirectly, charge, contract for, or receive any interest or consideration greater than twelve per centum per annum upon the loan, use or forbearance of money, goods or choses in action, or upon the loan, use or sale of credit, of the amount or value of three hundred dollars or less. The foregoing prohibition shall apply to any person who, as security for any such loan, use or forbearance of money, goods or choses in action, or for any such loan, use or sale of credit, makes a pretended purchase of property from any person and permits the owner or pledgor to retain the possession thereof, or who, by any devise or pretense of charging for his services, or*

*otherwise, seeks to obtain a greater compensation than is authorized by this act.*"

That Section which is now 9 M.R.S.A. § 3086 has undergone no substantial change other than as to the size of the loans from the original Sec. 13 of the 1917 Act.

In In Re Richards, 272 F.Supp. 480, 484 (D.Me.) (1967), rev'd on other grounds, 412 F.2d 635, (1 Cir. 1969), it was said:

"*The Maine Small Loan Law was enacted in 1917 in an effort to attract established lending agencies into the small loan financing field and to protect borrowers against 'loan sharks.' P.L. (Me.) 1917, c. 298, §§ 1–19.[8] This legislation provided for the licensing and regulation of small loan lenders and prescribed the maximum amount of interest which they could charge.*"

The footnote, to be found at 272 F.Supp. page 484, says:

"*The Maine statute was based upon the first draft of the Uniform Small Loan Act sponsored by the Russell Sage Foundation. For a description of the history and development of small loan legislation, see generally Curran, Trends in Consumer Credit Legislation (1965); 'Combating the Loan Shark,' 8 Law and Contemporary Problems (1941); Hubachek, Annotations on Small Loan Laws (1938).*"

The 1917 Act was introduced in the Legislature by Representative Garcelon. According to the 1917 Maine Legislative Record 1360, 1363, Representative Garcelon, sponsor of the bill, and Representative Redman both gave a detailed exposition of the loopholes in the Act of 1899, and a vivid description of how these loopholes were employed by "*loan sharks.*" Representative Garcelon described in great detail how the 1917 Act would close loopholes to "*loan sharks.*"

The entire thrust of the Garcelon statement is that the bill is aimed at the "*professional small money lender.*" The law

was necessary, the sponsor stated, to *"limit the amount which in all fairness the needy borrower should be compelled to pay for the use of the money which he obtains to tide him over a rough spot on life's journey."*

No place either in the language of the Act or in the statements made for the Legislative Record concerning the Act, is there clear indication that the statute was intended to include contracts for the sale of goods on credit within its terms.

Until the Bank Commissioner's Ruling was issued March 19, 1971, no regulatory agency of this State had ever suggested revolving charge accounts were subject to the provisions of 9 M.R.S.A. § 3086.

This is so despite the fact that such revolving charge accounts have existed in Maine at least since the 1950's.

The Commissioner's Order was obviously premised upon the position that the words: *"use or forbearance of money, goods or choses in action, or upon the loan, use or sale of credit"* found in 9 M.R.S.A. § 3086 are sufficiently broad to include interest charges on sale of merchandise on credit.

We must agree, taken by themselves and without reference to the other sections of the statute, the words, *"use or forbearance of money, goods or choses in action"* permit the interpretation the Commissioner places upon them.

However, we note the last paragraph of Section 3086 makes specific provision that the prohibition against interest in excess of 12% per year has application to loan of money in the guise of a *"pretended purchase of property."*

In the instant case it is established by the agreed statement the plaintiffs are retail merchants whose only business is the sale of goods and merchandise. No claim is asserted that these sales are *"pretended purchases"* designed to dress loans of money in disguise costume. Indeed, it is stipulated that the purchaser can never gain

money from the merchant even by the return of the merchandise. When merchandise is returned, a credit is given toward other purchases. Refunds of money are never permitted.

If the Legislature had intended to apply the statute to sales of merchandise on credit, it would have been unnecessary and, indeed, inconsistent to have asserted this proscription against *"pretended purchases"* of property.

By inserting the provision relating to *"pretended purchases"* we think the Legislature made it clear it did not contemplate bona fide purchases of property on credit should be within the purview of the statute.

There may well be conditions which the Legislature attempts to change or establish by enacting a statute. In such cases the State policy intended to be declared by the statute may be abundantly clear. Yet in drafting the statute the words employed may appear to limit its application to practices expressly described.

■ Nevertheless, when it is clear that the policy consideration which brought about the Legislature's action was to remedy a problem by whatever practices the problem is created, we think the Court is required to so construe the statute.

For example: The Legislature used the word *"team"* in enacting 29 M.R.S.A. § 941. At that time automobiles were unknown. It is clear the statute was enacted for the purpose of regulating the passage of vehicles meeting on the highway so that travelers proceeding in opposite directions would not obstruct each other or so interfere one with the other as to produce injury or expose them to danger. Palmer v. Barker, 11 Me. 338 (1834).

Since the purpose of the statute was abundantly clear, our Court felt compelled to construe the word *"team"* to include an automobile. Bragdon v. Kellogg, 118 Me. 42, 105 A. 433 (1919).

In the instant case the policy considerations are not sufficiently clear for us to declare the statute applicable to sales of merchandise on credit as well as loans of money in amounts in excess of the statutory maximum.

The evil which was sought to be curbed by the enactment of this statute, was the evil created by money lenders or *"loan sharks."* We know of nothing to indicate comparable conditions have arisen from the sale of merchandise on credit.

By construing the statute as he did the Bank Commissioner made a determination of policy. If we were to adopt his construction, it seems to us, we too would be making a policy decision which ought be left to the determination of the Legislature.

A fair reading of the statute as a whole, together with the history of the enactment, we conclude, demonstrates the Legislature has not determined it to be the policy of this State that revolving charge accounts are subject to the provisions of 9 M.R.S.A. §§ 3081 through 3086.

We are satisfied that the Bank Commissioner erroneously interpreted this statute when he issued Ruling 1971–1.

The entry must be,

Remanded to the Superior Court for the entry of Permanent Injunction Restraining the Bank Commissioner and all persons in active concert or participation with him from enforcing or taking any steps to enforce Bank Commissioner's Ruling 1971–1.

All Justices concurring.