Benny L. KASS and Salme Kass, Appellants,

v.

GARFINCKEL, BROOKS BROTHERS, MIL-
LER & RHOADS, INC., a Virginia corpora-
tion d/b/a Julius Garfinckel & Co., Appel-
lee.

No. 6719.

District of Columbia Court of Appeals.

Argued Dec. 8, 1972.

Decided Jan. 24, 1973.

Rehearing En Banc Denied Feb. 22, 1973.

Jerry S. Cohen, Washington, D. C., with whom Herbert E. Milstein and Michael D. Hausfelt, Washington, D. C., were on the brief, for appellants.

John J. Ross, Washington, D. C., with whom Robert J. Elliott and Peter W. Tredick, Washington, D. C., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

The issue in this case is whether a retail merchant may enforce a revolving charge account agreement with a customer, the terms of which require payment of one and one-half (1½) percent per month on balances remaining unpaid after the first billing cycle for goods purchased on credit. As this monthly rate computed on an annual basis amounts to 18%, such rate, if interest, is obviously in excess of the eight (8) percent limit placed on written contracts for the payment of money by the District of Columbia usury statutes in force at the time this action was commenced.[1]

Appellants, customers of Garfinckel's, contending that the latter's revolving credit

---

1. D.C.Code 1967, Tit. 28, Ch. 33, §§ 3301, 3302, 3303. This chapter was subsequently amended, and new chapters 36, 37, and 38 added, by the D.C. Consumer Credit Protection Act of 1971. Act of Dec. 17, 1971, Pub.L.No.92-200, 85 Stat. 665. See D.C.Code 1967 (Supp. V, 1972).

plan violated the usury laws, brought this action under § 28–3304 to recover for themselves and customers similarly situated, interest unlawfully paid. The asserted unlawfulness of such payments depends on whether these local statutes are applicable to such credit arrangements. The trial court, by granting Garfinckel's motion for summary judgment (and denying appellants' cross-motion), answered this question in the negative. We agree with the findings and conclusions of law set forth in an extensive opinion accompanying such order, and affirm the judgment.

In moving for summary judgment, Garfinckel's argued that the challenged transactions were bona fide sales of merchandise for which payment may be deferred, and not loans of "money or goods" within the meaning of the statute. Garfinckel filed in support of its motion a statement of material facts as to which it contended there was no genuine issue. This statement, not challenged by appellants, discloses that the basic terms of the revolving charge agreements are as follows:

When Garfinckel consents to enter into such an agreement with a prospective customer, that customer is entitled to make credit purchases at the same price as cash sales from any Garfinckel store in the metropolitan area by presenting his charge card to the sales person. Each month, on a specified billing date, Garfinckel forwards to each of its charge customers a statement detailing the current purchases, payments, charges, and credits. The customer then has the option of paying the total amount due before the next billing date, thereby avoiding imposition of any finance charge, or of making a partial payment and incurring a finance charge on the unpaid balance. The finance charge is applied to the current outstanding balance at a rate of 1½ percent per month on the first $500, and 1 percent per month on any amount in excess of $500.

The trial court acknowledged that the precise question presented by a merchant's revolving credit plan is a novel one in this jurisdiction, and adverted to the established rule of looking into "all the circumstances of a transaction to determine whether . . a disguise or contrivance has been created for the purpose of securing usurious interest." Having analyzed the particular transaction, that court held under the broad doctrine of Morris v. Capitol Furniture & Appliance Co., Inc., D.C.App., 280 A.2d 775 (1971), that the contract did not fall within the prohibition of the usury laws. In *Morris* we said that "a bona fide sale of property on credit at a price which exceeds the cash price by more than the legal rate of interest does not constitute usury, since the seller is privileged to fix one price for cash and another for credit." [*Id.* at 777; citations omitted.]

The trial court went on to say that:

. . . When we look beyond trappings to substance, we see that a charge account with defendant enables customers to make purchases at defendant's stores on a deferred payment basis without the need to pay in cash. In return for that consideration the customer agrees to pay a credit service charge under certain circumstances. He has it within his control to avoid all such credit charges, or he may take advantage of the deferral option and pay an amount of up to 18 percent per year. This is not the stuff of a loan or forbearance. There is no "definite agreement to pay, in any event, an amount in excess of the legal rate . . by its terms." M. Lowenstein & Sons, Inc. v. British American Mfg. Co., 7 F.2d 51 (2d Cir. 1925). The customer determines whether he will or will not pay a finance charge; he decides how long the payments will extend; and he may make credit purchases without filing a new loan application each time. . . .

In our opinion, the trial court's analysis of the revolving credit agreement was sound. It is true that the monthly credit service charge bears a resemblance to a

loan of money pursuant to which the borrower promises to pay a fixed rate of interest, either monthly or annually, until the principal is repaid. But the distinction between such lending arrangements and so-called time-price sales—a merchantile practice of quoting one price for payment .on delivery and a higher price for payment at a later date—is well established in this jurisdiction. *See* Morris v. Capitol Furniture & Appliance Co., Inc., *supra*, and cases cited therein.

Appellant contends, however, that *Morris* and the precedents on which it was based are not controlling here, as those decisions dealt with the "traditional" time-price kind of sales in contradistinction to revolving credit accounts. Obviously there are factual differences between these types of credit arrangements, but we do not regard such differences as significant so far as bringing the usury statutes into play. If anything, a conditional sale of goods the terms of which vest the vendor with the right of repossession, would seem to come closer to § 28–3302, *supra*, than the Garfinckel credit plan at issue here, as this section of the local usury chapter refers to a loan of "money or goods." Yet we held in *Morris* that the typical conditional sales contract was outside the scope of this chapter.

Indeed, in the leading common law case on the subject of time-price sales, the transaction challenged as in violation of an English usury statute, enacted in the reign of Queen Anne, bore a striking resemblance to the particular credit arrangement assailed by appellants here. In an opinion concurred in by the other judges of King's Bench, Lord Mansfield held that the agreement drawn into question was not usurious because no loan or forbearance was involved. Floyer v. Edwards, 98 Eng.Rep. 995, 1 Cowp. 112 (1774).

■ Nevertheless appellants argue that we should accept the reasoning of the Supreme Court of Wisconsin in State v. J. C. Penney Co., 48 Wis.2d 125, 179 N.W.2d 641 (1970), where a revolving credit arrangement very much like the one before us was held to be usurious. This same decision was urged upon us in *Morris*, and rejected. We do so again, although the arrangement here is virtually the same as that in the Wisconsin case, unlike the situation in *Morris*. We believe the Wisconsin court's basic premise, *viz.*, that a credit sale creates a debt, collection of which is forborne in exchange for interest, is irreconcilable with the time-price doctrine as it exists in this jurisdiction, being broad enough to apply to conditional sales as well as revolving credit transactions.

The weight of recent authority supports our decision. Standard Oil Company (Indiana) v. Williams, Ind.App., 288 N.E.2d 170 (Ct.App., 1st Dist., 1972); Sliger v. R. H. Macy & Co., 59 N.J. 465, 283 A.2d 904 (1971); Dennis v. Sears, Roebuck & Company, 223 Tenn. 415, 446 S.W.2d 260 (1969); Uni-Serv Corporation of Massachusetts v. Commissioner of Banks, 349 Mass. 283, 207 N.E.2d 906 (1965). *Cf.* Maine Merchants Association, Inc. v. Campbell, Me., 287 A.2d 430 (1972).

In conclusion, we note that since the commencement of this action in the court below, Congress has expressly validated revolving credit arrangements with "credit service charges" allowed at the rates charged by appellee Garfinckel. *See* D.C. Code 1967, Tit. 28, Ch. 37 (Supp. V, 1972). It is obvious that this and other portions of the Consumer Credit Protection Act of 1971 were intended to forestall judicial interference with established commercial practices, just as Section 9 of the Act was intended to rectify the unsettled situation in the area of mortgage financing created by the decision in In re Parkwood, Inc., 461 F.2d 158 (1971). We do not rely on this enactment for our decision here, nor would it deter us from rendering a contrary decision if we felt that the previous state of the law required it. Nevertheless we think it indicates that our present hold-

ing is in harmony with Congressional intent at the time the local usury laws were originally passed.

Affirmed.