Benny L. KASS and Salme Kass, Appellants,

v.

CENTRAL CHARGE SERVICE, INC., Appellee.

No. 6788.

District of Columbia Court of Appeals.

Argued Feb. 26, 1973.

Decided May 11, 1973.

---

Jerry S. Cohen, Washington, D. C., with whom Herbert. E. Milstein and Michael D. Hausfeld, Washington, D. C., were on the brief, for appellants.

David G. Bress, Washington, D. C., with whom Thomas C. Green, Washington, D. C., was on the brief, for appellee.

Before FICKLING, YEAGLEY and HARRIS, Associate Judges.

PER CURIAM:

The only real issue raised by this appeal, in light of our recent decision in Kass v. Garfinckel, D.C.App., 299 A.2d 542 (1973), is whether there is a legally significant difference between an in-house revolving credit plan as in *Garfinckel* and a revolving credit plan operated by a financial institution for the benefit of participating retail merchants as in the case at bar, which we have previously described as an open end consumer credit plan.[1] Barring any significant differences, we are bound by our holding in *Garfinckel, supra*.[2]

Appellants brought this action on behalf of themselves and others similarly situated to recover damages allegedly sustained by them as a result of appellee's alleged violations of the District's usury laws [3] And to enjoin appellee from further engaging in said violations. Simply stated, the appellee's plan as it affects one making a purchase through it provides for finance charges payable monthly at an annual percentage rate of 18 percent per year on certain unpaid balances.[4] The local usury law, in effect at the time of the institution of this suit, however, prohibited the charging of more than 8 percent interest on a loan or forbearance.

In *Garfinckel, supra*, we held that the operation of a revolving credit arrangement by the retailer, resulting in an interest rate of 18 percent per year, was not usurious within the framework of the District's usury laws in that it came within "the time-price doctrine as it exists in this jurisdiction".

The court below granted appellee's motion for summary judgment. Judge Belson's opinion on the motion contains a sound analysis of the problem comparing the case at bar with *Garfinckel* and concluding that:

> The relationship of the parties and their contentions here are essentially similar

1. White v. Central Charge Service, Inc., D.C.App., 285 A.2d 305, 306 (1971).

2. M.A.P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

3. D.C.Code 1967, § 28–3301 et seq. *See also* discussion in Kass v. Garfinckel, *supra*.

4. The trial court, in capsule form, described the plan operated by appellee as follows:

> Independent merchants contract with Central Charge to accept customers' Central Charge cards in lieu of cash. The merchant sends all daily charge slips to Central Charge or deposits them in an office of The Riggs National Bank, the parent corporation of Central Charge Service, Inc. Central Charge or

> Riggs, as the case may be, thereupon credits the merchant's account with the net amount of the transmittal. This net amount represents the sum of the credit slips deposited less a service charge of between 5 and 5½ percent, depending on the annual volume of the member merchant's Central Charge business. The merchant, however, may not charge a different price to Central Charge customers than to anyone else, including cash customers. The 5 or 5½ percent charge assessed against the retailer is almost entirely a matter between the merchant and Central Charge. While it may have some minimal effect on the level of retail prices generally, the discount is not viewed by this Court to be sufficient to bring the usury laws into play.

to those in *Garfinckel* except for the fact that the defendant here is not a retailer, but rather is a financial institution in the business of issuing credit cards which are honored by thousands of independent merchants in the Washington area. . . .

.    .    .    .    .    .

Although the arrangements entered into by Central Charge are slightly different from those employed in retailer-operated revolving charge account agreements, they are sufficiently similar to entitle Central Charge to the same beneficial exemption from the usury laws being accorded retailers who operate their own plans. Indeed, a contrary ruling would unfairly discriminate against the thousands of smaller independent merchants who subscribe to the Central Charge Service. They would be placed at a competitive disadvantage vis-a-vis large department stores if Central Charge were forced out of business. [Footnote omitted.]

We agree with the trial court and accordingly affirm. In Uni-Serv Corp. of Massachusetts v. Commissioner of Banks, 349 Mass. 283, 207 N.E.2d 906, 908 (1965), where the sole issue was whether the defendant was in the business of making loans, the Supreme Judicial Court of Massachusetts held that a plan, which is identical in all essential details to the Central Charge Plan herein, was

essentially a time sales financing arrangement in which credit is extended for the sole purpose of purchasing goods or services from stores participating in the plan. . . . The fact that the ultimate creditor is Uni-Serv and not the seller of goods or services is likewise of no consequence. . . .

Thus finding that there is no meaningful distinction between the arrangement herein and the one presented in *Garfinckel, supra,* we affirm.

Affirmed.