STANDARD OIL COMPANY (INDIANA) ; THE AMERICAN OIL COMPANY (MARYLAND) *v.* ROBERT O. WILLIAMS.

[No. 1171A233. Filed October 17, 1972. Rehearing denied November 16, 1972. Transfer denied August 29, 1973.]

*Alan W. Boyd, Thomas M. Scanlon, Robert P. Johnstone, Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, *Luke White,* of Covington, *Harry T. Ice, James E. Hawes, Jr., Ice, Miller, Donadio & Ryan,* of Indianapolis, *Lewis D. Dellinger, Jr., Dellinger &Dellinger,* of Monticelo, for appellants.

*Ward S. Williams, Robert O. Williams,* of Covington, for appellees.

ROBERTSON, P.J.—The plaintiff-appellee (Williams) is the holder of a credit card issued by the defendant-appellant (Standard). Williams filed a class action for recovery of certain monies paid to Standard, premised upon the theory that they constituted usury. In granting Williams' motion for partial summary ·judgment, the trial court held, *inter alia:* "That the plaintiff and his class are entitled to recoup and recover the usurious interest charged by the defendants. . . ." This appeal ensues, with the threshold issue being whether the 1½% "Finance Charge" paid to Standard is usurious as defined by Indiana statutes.

American Oil Company (a wholly owned subsidiary of Standard Oil Company [Indiana]) adopted a "Revolving Charge Account Agreement," which reads:

"Buyer agrees with American Oil Company, (American), 165 North Canal Street, Chicago, Illinois, 60606, that all purchases charged under any American Oil Company Credit

Card or supplemental card issued to buyer or at his request is indebtedness of buyer, which may be purchased or acquired by American.

"Buyer agrees to pay American either (1) the full amount of his outstanding balance within 25 days from his statement closing date (always 30 days from purchase date) in which event no FINANCE CHARGE will accrue or (2) an installment payment based on the following minimum payment schedule in which event a FINANCE CHARGE will be incurred; If outstanding balance is $10 to $100, the minimum payment is $10, or if balance is over $100, the minimum payment is 10% of balance. Balances under $10 are payable in full. Buyer may at any time pay his balance in full.

"Buyer agrees to pay a FINANCE CHARGE computed by periodic rates of $1\frac{1}{2}\%$ per month applied to the first $500 of his previous balance after deducting current payments, credits, and past due insurance premiums, and 1% per month of his previous balance in excess of $500. such FINANCE CHARGE to become part of buyer's outstanding balance.

"$1\frac{1}{2}\%$ per month is an ANNUAL PERCENTAGE RATE OF 18%. 1% per month is an ANNUAL PERCENTAGE RATE OF 12%.

\* \* \*

"Notice to Buyer: (1) Do not sign this agreement before you read it or if it contains blank spaces. (2) You are entitled to an exact copy of this agreement at the time you sign it; save it to protect your rights. (3) You have the right to pay in advance the full amount due. Buyer hereby acknowledges receipt of a true executed copy of this agreement."

In addition, the credit card and sales slips reiterated the substance of the above quoted agreement.

Williams elected to defer payment thereby paying the $1\frac{1}{2}\%$ Finance Charge prior to the filing of this cause.

The legal basis for this case rests upon the following Indiana statutes:

"Legal rates of interest on loans or forbearances.—The interest on loans or forbearance of money, goods, or things in action, shall be as follows:

(a) When the parties do not agree on the rate, interest shall be at the rate of six dollars [$6.00] per year per one hundred dollars [$100];

(b) By agreement in writing signed by the party to be charged thereby, and not otherwise, any obligor other than a corporation may lawfully agree to pay any rate of interest not in excess of eight dollars [$8.00] per year per one hundred dollars [$100]; * * *" IC 1971, 24-5-1-1, Ind. Ann. Stat. § 19-12-101 (Burns 1964).

"USURIOUS RATE OF INTEREST ON CONTRACT—DEBTOR'S RECOUPMENT.—When a greater rate of interest than is hereby allowed shall be contracted for, the contract shall be void as to the usurious interest contracted for; and, if it appears that interest at a higher rate than eight per cent (8%) has been, directly or indirectly, contracted for by an obligor other than a corporation, the excess of interest over six per cent (6%) shall be deemed usurious and illegal, and, in an action on a contract affected by such usury, the excess over the legal interest may be recovered by the debtor, whenever it has been reserved or paid before the bringing of the suit." IC 1971, 24-5-1-4 Ind. Ann. Stat. § 19-12-104 (Burns 1964).

(Both statutes quoted have since been repealed by Acts 1971, P. L. 366 § 10[1]).

Williams further relies upon *Wisconsin* v. *J. C. Penney Co.* (1970), 48 Wis. 2d 125, 179 N. W. 2d 641, and *Rollinger* v. *J. C. Penney Co.* (1971), S. D. 192 N. W. 2d 699. Both cases hold that under an agreement similar to the Revolving Charge Account Agreement in this case, the 1½% amounts to forebearance and is, therefore, usurious.

Standard maintains the position that the 1½% is a time-price differential which, under Indiana law, does not constitute usury. *Hogg v. Ruffner* (1861), 66 U. S. 115, 17 L. Ed. 38; *Newkirk* v. *Burson and Others* (1867), 28 Ind. 435; *Stevens* v. *Grossman* (1935), 100 Ind. App. 417, 196 N. E. 123; and *Robrock* v. *Ditzler* (1943), 113 Ind. App. 332, 47 N. E. 2d 163.

A fair summary of the law upon which Standard relies, is contained in the *Stevens* case, *supra,* which reads:

"The law is well settled that usury can only attach to a loan of money, or to the forbearance of a debt, and that, on a contract to secure the price or value of work and labor done, or to be done, or of property sold, the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves, if credit be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lumped sum to the cash price, or by a percentage thereon. In neither case is the transaction usurious. It is neither a loan nor the forbearance of a debt, but simply the contract price of work and labor done and property sold; and the difference between cash and credit in such cases, whether 6, 10 or 20 per cent must be left exclusively to the contract of the parties, and no amount of difference fairly agreed upon can be considered illegal." (Citing authorities). 100 Ind. App. 417, 418, 196 N. E. 123, 124.

It is our opinion that Standard's position is legally correct and the trial court erred as a matter of law in ruling as it did.

We are not unmindful of our duty to examine the transaction here involved as to its substance and not, necessarily, as to its form. See *Havens* v. *Woodfill* (1971), 148 Ind. App. 366, 266 N. E. 2d 221. In so examining we find this transaction, reduced to its most basic form, to be a sale of goods on credit. For further examples supporting the time-price differential, see also: *Floyer v. Edward* (1774), I Cowp. 112, 98 Eng. Rep. 995; *Hafer* v. *Spaeth* (1945), 22 Wash. 2d 378, 156 P. 2d 408; *Dennis v. Sears, Roebuck and Co.* (1969), 223 Tenn. 415, 446 S. W. 2d 260; *Morris* v. *Capitol Furniture & Appliance Co. Inc.,* (D. C. App. 1971), 280 A. 2d 775, and *Sliger* v. *R. H. Macy & Co.* (1971), 59 N. J. 465, 283 A. 2d 904. Contra: *Rollinger, supra; Wisconsin, supra; Sloan* v. *Sears, Roebuck and Co.* (1957), 228 Ark. 464, 308 S. W. 2d 802, and *Lloyd* v. *Gutgsell* (1963), 175 Neb. 775, 124 N. W. 2d 198.

Those cases which support Standard indicate the time-price differential has several identifiable attributes. A bona fide sale of property, a difference between cash and credit prices, no second or subsequent agreements as to price, payments in future installments and the absence of a prior existing debt, are but several of the more prominent distinctions. We are of the opinion that each of the aforementioned exist in the present case, thereby creating a time-price differential.

Another sound legal basis for reversing is found in the Uniform Consumer Credit Code, IC 24-4.5-2-101 *et seq.*, Ind. Ann. Stat. § 19-22-101 (Burns 1971), which was adopted during the pendency of this case.

> "(3) Because there is presently no statute of the State of Indiana governing or otherwise pertaining to the maximum credit, service, finance, interest or other charges which may be imposed by sellers or lenders, as defined in this Act, in connection with revolving charge accounts and revolving loan accounts, as defined herein, the provisions of the Act establishing maximum charges therefor and establishing debtors' remedies and criminal penalties for violation thereof shall be in full force and effect as to such accounts and transactions making the use of sellers or lenders credit cards, as defined herein, from and after the passage of this Act by reason of an emergency existing for the immediate taking effect thereof.
>
> (4) Transactions entered into before the General Effective Date of this Act and the rights, duties and interests flowing from them thereafter may be terminated, completed, consummated, or enforced as required or permitted by any statute, rule of law, or other law amended, repealed, or modified by this Act as though the repeal, amendment, or modification had not occurred, except that this Act shall apply to
>
> (a) * * *
>
> (b) sales or loans made pursuant to revolving charge accounts . . . and revolving loan accounts . . . *entered into,* arranged, or contracted for *before the passage of this Act._. . ."* (Emphasis added).

Acts 1971, P. L. 366 § 8.

Sub-section (b) reflects a departure from the wording of the Uniform Code as approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1968 (7 U. L. A. Master Ed., p. 319), in that it applies retroactively instead of prospectively.

Neither can we approve of Williams' position that the UCCC can deprive him of his rights to recoup the allegedly usurious interest, because:

> "The forfeiture of interest, on account of usury, is in the nature of a penalty; hence the repeal of the statute creating the forfeiture will relieve from it to the extent of the repeal." *Wood* v. *Kennedy* (1862), 19 Ind. 68 at p. 70.

and:

> ". . . in a penalty there can be no vested right until it has been reduced to a judgment. A mere penalty never vests, but remains executory." *State ex rel. Thomas* v. *Youmans* (1854), 5 Ind. 280 at p. 282.

This cause is reversed and remanded with direction to the trial court to enter summary judgment for the defendant-appellants.

Reversed and remanded.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported in 288 N. E. 2d 170.