Opinion
 

 BEACH, J.
 

 Nature of Case:
 

 This appeal involves class actions challenging the validity of various charge account practices by several retail department stores and by Union Oil Company of California (Union) and Mobil
 
 Oil
 
 Corporation (Mobil). The cases against the department stores
 
 [1]
 
 and against the oil companies
 
 *871
 
 were consolidated for the purpose of trial and again are consolidated on appeal. After trial, the trial court vacated the interlocutory class certification order entered in the Mobil action, dismissed the complaints in all the actions, and awarded judgment to defendants. Plaintiffs in these class action suits appeal from the judgment and from all adverse rulings of the trial court.
 

 Facts:
 

 The plaintiffs are and purport to represent other purchasers of goods from the defendants’ department stores, gasoline and other automobile products from defendants Union and Mobil. Some of the sales by defendants are on credit and defendants make certain charges for such credit sales. The type of sale involved at bench is the revolving or open account. Such sales are commonly called “credit card” sales because of the use of the modern day credit card. The defendant sellers charge from 1 percent to
 
 Wi
 
 percent per month on the unpaid balance after certain periods of time. In this respect there are some variations between defendants and depending upon time and amount of balances. These per month charges exceed the 10 percent rate of interest used in the California constitutional provision relating to usury. The foregoing is a simplified summary. Other additional facts appear in greater detail in our discussion below.
 

 Appellants’ Contentions:
 

 Appellants make several basic contentions of error. They list numerous subarguments under each general argument in both their opening and reply
 
 [2]
 
 The appellants’ contentions can be summarized at this point as follows:
 

 
 *872
 
 1. The tripartite credit arrangements of respondents Union and Mobil are not protected by the time-price doctrine.
 

 2. Mobil’s late charge is an invalid penalty damage provision and not a valid liquidated damage provision.
 

 3. The rates set forth in the Unruh Act are not controlling in this case in that Union and Mobil are not “retail sellers” and in any event section 1810.2 of the Unruh Act is in conflict with the California Usury Law and article XV of the California Constitution.
 

 4. The trial court erred in denying appellants’ motion for leave to file a supplemental complaint and in refusing to receive evidence of damages sustained through the date of judgment.
 

 5. The trial court erred in overruling appellants’ objections to the proposed findings and conclusions and in failing to make findings of fact, special findings, and counterfindings as requested by appellants.
 

 6. The trial court erred in vacating the class certification order in the action against respondent Mobil.
 

 Our Decision on the Issues Raised:
 

 We reject appellants’ contentions and we affirm the judgment of the trial court.
 

 We hold: (1) a “time-price” or a “finance charge” in a bona fide sale of goods or services is not a form of interest within the meaning of California Constitution article XV provision against usury; (2) the sales by defendants of their goods and services are bona fide sales to which the . doctrine of “time-price” applies.
 

 Discussion:
 

 The trial court rendered a notice of intended decision supported by meticulous findings of fact.
 
 [3]
 
 The memorandum of intended decision contains an excellent discussion and analysis.
 

 
 *873
 
 That analysis by Judge William H. Levit is thorough. The reasoning is sound. The conclusion there reached is supported by the authorities cited by him, and is further supported by the recent case of
 
 Boerner
 
 v.
 
 Colwell Co.,
 
 21 Cal.3d 37 [145 Cal.Rptr. 380, 577 P.2d 200], rendered after his decision. In our view,
 
 Boerner
 
 fully answers appellants’ contentions not only as to the department store defendants, but also solidly affirms the trial court’s conclusion that the sales of Union and Mobil products through their independent dealers does not remove Union and Mobil from the status of bona fide sellers on credit of goods and services.
 

 Approving
 
 Verbeck
 
 v.
 
 Clymer,
 
 202 Cal. 557 [261 P. 1017], relied on by Judge Levit,
 
 Boerner
 
 states: “It has long been the law in this jurisdiction, as well as in the vast majority of other jurisdictions, that a bona fide credit sale is
 
 not
 
 subject to the usury law because it does not involve a ‘loan’ or ‘forebearance’ of money or other things of value.” (Italics added;
 
 Boerner, supra,
 
 21 Cal.3d at p. 45.)
 

 Boerner,
 
 however, is more than merely recognition of the “time-price doctrine” as an exception to the law governing usury.
 
 Boerner
 
 also teaches that the substance of the transaction not its form is what is important in determining whether it is or is not a credit sale. Specifically,
 
 Boerner
 
 holds that the fact that a party may appear to be a “third party” or to be “financing” the sale, as appellants here claim is the position of Union and Mobil, does not render the transaction a mere loan as to such “third party.” At bench Mobil and Union are bona fidedly selling their products.
 

 Appellants assert the oil companies are not retailers because of the definition of retailer in the Unruh Act. Whether or not the label of “retailer” as defined in the Unruh Act applies to defendants Union and Mobil is not controlling. The sales through their independent dealers are not exempt because the Unruh Act exempts them, but because the transactions are good faith credit sales of their products. This good faith sale of products was recognized as not subject to the usury limitation before the enactment of the Unruh Act.
 
 (Verbeck
 
 v.
 
 Clymer, supra,
 
 202
 
 *874
 
 Cal. at pp. 562-563.) We are not to be misunderstood as saying that Union and Mobil are free to charge whatever time-price they may choose because neither the Constitution nor the Unruh Act apply to their activities. On the contrary, we now hold that the credit sales of defendants Mobil and Union are sales within the meaning of “retail sales” for the purpose of application and control by the provisions of the Unruh Act. The time-price charges of Union and Mobil, however, are within the limits allowed by the act.
 

 Because in our view the memorandum by Judge Levit correctly treats and disposes of the issues involved, we adopt the major portion thereof as and for a part of the opinion of this court. Such part of the opinion, with deletions and other additions and changes as indicated,
 
 [4]
 
 is as follows:
 

 As to the 10 [department store] retailers, the issue is the legality of finance charges billed by the defendants on revolving charge accounts pursuant to the Unruh Act (the Act). (Stats. 1959, ch. 201, p. 2092 et seq.; Civ. Code, § 1801 et seq.) Section 1810.2 of that Act authorizes the calculation of finance charges on such accounts at rates of 1
 
 Vz
 
 percent per month on balances up to $1,000, and 1 percent per month on amounts exceeding $1,000. Plaintiffs urge that such charges exceed the maximum interest rate of 10 percent per annum upon a loan of money permitted by [present art. XV
 
 [5]
 
 ] of the California Constitution, and to the extent the Act purports to authorize effective rates in excess of 10 percent it is unconstitutional. On the other hand, defendants contend that the constitutional usury provision is inapplicable to finance charges on revolving charge accounts as regulated by the Act because they involve retail installment sales and not loans, and thus are excluded from the ambit of the usury law, which regulates the rate of interest upon the loan of money, and accordingly the Act is constitutional. As to the oil companies, additional issues are involved which will be set forth below.
 

 [F]our of the retailer defendants have stipulated that their finance charges to the named plaintiffs in those cases exceeded an effective rate of 10 percent per annum, and therefore if these charges are held to be interest, they would have been assessed in violation of the usury law. As
 
 *875
 
 to the other defendants, if the court [had determined] the charges are interest and thus subject to the usury law, additional evidence [would have been] taken to determine if the effective yield
 
 [6]
 
 as to any defendant exceeded 10 percent and thus violated the usury law. However, in view of the aforementioned stipulation by four defendants, the [trial] court determined that the most expeditious way to proceed in these cases was to first determine whether defendants’ finance charges are interest and thus subject to the usury law; in short, to first determine whether the Act, in providing for nominal rates of 1
 
 1/2
 
 percent and 1 percent per month which can result in effective yields in excess of 10 percent is constitutional.
 

 The Retailers’ Cases
 

 As described in
 
 [Seibert
 
 v.
 
 Sears, Roebuck & Co.,
 
 45 Cal.App.3d 1 (120 Cal.Rptr. 233)] the Act provides for, and regulates, two arrangements under which retail installment credit may be extended to a “buyer” by a “seller” in California. One plan is the so-called “closed-end contract” which is not involved in the present actions. The other credit arrangement offered is the so-called “revolving charge account,” which is the subject of the present actions and which is denominated “ ‘retail installment account’ or ‘installment account’ or ‘revolving account’ ” in section 1802.7, which also defines it and its terms. The revolving account is established by a single agreement between the store and the customer without a down payment by the latter, and it operates so as to permit the customer to make continuing credit purchases from time to time without having to enter into a new contract, or contract revision, on the occasion of each new credit purchase. The agreement provides for minimum monthly installment payments, but the customer is given the option to make payments in excess of the minimum monthly amount at any time.
 

 The revolving account also carries a “finance charge” as defined in section 1802.10, but the Act does not require its precomputation as in the case of a closed-end contract; instead, it is periodically calculated on the basis of monthly “balances” as provided in section 1810.2. Such “balances” are billed to the customer on statements which are sent to him after the close of his monthly “billing cycle,” a time period which is defined in section 1802.17. Section 1810.1 requires a written disclosure to the customer, covering these matters and others, at the inception of any revolving account. The contents of each monthly statement are prescribed
 
 *876
 
 in section 1810.3. Because of its convenience, the revolving account has largely replaced the “closed-end contract” arrangement in this state.
 

 In 1774, the courts of England
 
 (Floyer
 
 v.
 
 Edwards
 
 (K.B. 1774) 98 Eng.Rep. 995) announced the so-called “time-price” doctrine whereby bona fide credit sales were held to be exempted from usury laws and the maximum interest rates established thereby, on the theory that the usuiy laws applied to loans and not to sales, and therefore interest was not involved in a sale. This doctrine has been followed in almost every state in the United States since it was announced in this country in 1861 by the United States Supreme Court, in the case of
 
 Hogg
 
 v.
 
 Ruffner,
 
 66 U.S. (1 Black) 115 [17 L.Ed. 38],
 

 California adopted its first usury law by the initiative process in 1918 which established a maximum interest rate of 12 percent per annum for “the loan or forbearance of money.” (Initiative measure, Stats. 1919, p. lxxxiii.) In 1934, the state Constitution was amended to reduce the maximum interest rate to 10 percent per annum. (Art. XX, § 22.) [Now art. XV.]
 

 In 1927, in the case of
 
 Verbeck
 
 v.
 
 Clymer,
 
 202 Cal. 557 [261 P. 1017], the California Supreme Court adopted the time-price doctrine, stating as follows:
 

 “. . . [W]e have no hesitancy whatsover in declaring that the transaction set up in the answer and cross-complaint is not in any sense a loan within the meaning of said usury law. The contract is admittedly a
 
 bona fide
 
 one of sale and purchase of real property where the title is retained by the vendor. The purchase price is therein named and the terms of sale are fixed and certain deferred payments are provided for. There is in the transaction no element of a loan. . . . The transaction was not a subterfuge devised to conceal what was in fact a loan. ...
 

 “ ‘. . . On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense; and it has been held that it is not material that the agreement for the purchase price in the future, instead of specifying the whole sum then to be paid, names a particular sum as principal, and declares that it shall draw interest at a
 
 *877
 
 rate which, were the transaction a borrowing and lending, would clearly be usurious; . . .”’
 

 Since then, the California courts have followed the time-price doctrine. Where the question has arisen, the courts uniformly inquire whether the essence of a transaction is a bona fide sale or a loan disguised as a sale. If it is a sale, then under the time-price doctrine there can be no usury, since there is no loan or forbearance of money, and hence no interest. In making this determination of “sale” .versus “loan,” the courts uniformly look to the substance of the transaction rather than its form. [Prior to Boerner.] The most recent expression of the rule by the California Supreme Court is found in
 
 Glaire
 
 v.
 
 La Lanne-Paris Health Spa, Inc.
 
 (1974) 12 Cal.3d 915 [117 Cal.Rptr. 541, 528 P.2d 357], where it is stated:
 

 “Defendants urge that the practice of transferring notes at a discount cannot amount to usury regardless of the margin of profit anticipated by the buyer. In so contending, defendants rely on
 
 Milana
 
 v.
 
 Credit Discount Co.
 
 (1945) 27 Cal.2d 335, 340 [163 P.2d 869, 165 A.L.R. 621], in which we stated that ‘[contractors are free to buy and sell their property, and this may include promissory notes and other instruments, at a price agreed upon, and when the bona fides of the parties is established the percentage of profit has no relation to the usury law.’ (See also
 
 Moe
 
 v.
 
 Transamerica Title Ins. Co.
 
 (1971) 21 Cal.App.3d 289, 300 [98 Cal.Rptr. 547].) But as we proceeded to observe in
 
 Milana,
 
 the good faith of the parties is crucial to the insulation of discount transactions from usury consideration, and good faith is ultimately a question of fact: ‘lenders, intent on collecting compensation for the use of money in excess of the lawful rate, seek to avoid transacting their business in the form of loans. The courts have been alert to pierce the veil of any plan designed to evade the usury law and in doing so to disregard the form and consider the substance. [Citations.]. . . “No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings.” All of the negotiations, circumstances and conduct of the parties surrounding and connected with their contracts may be material in determining whether the form thereof covered an intent to violate the usury law. . . .’”
 

 
 *878
 
 In 1959, the California Legislature adopted the Unruh Act. In studying the legislative history of this Act, and the provisions of the Act itself, it is clear that the Legislature thereby intended to adopt and made applicable the time-price doctrine to retail installment sales including revolving account transactions, and to subject such transactions to the regulations prescribed by the Act. The Act defines the term “retail installment sales” as including all forms of retail installment transactions, including revolving account transactions. Section 1802.5 provided: “ ‘Retail installment sale’ or ‘sale’ means the sale of goods or furnishing of services by a retail seller to a retail buyer for a time sale price payable in installments.”
 
 [7]
 

 The statutory term “retail installment sales,” which embodies the concept of a “time sale price,” is used interchangeably to refer to sales on revolving accounts as well as sales on installment contracts. Section 1802.7 defined revolving accounts with reference to the term “retail installment sales”: “ ‘Retail installment account’ or ‘installment account’ or ‘revolving account’ means an account established by an agreement entered into in this State, pursuant to which the buyer promises to pay, in installments, to a retail seller, his outstanding balance incurred in retail installment sales . . . and which provides for a service charge expressed as a percent of the periodic balances to accrue thereafter. . . ,”
 
 [8]
 

 The term “time sale price,” applicable to all retail installment sales, was defined in section 1802.9 as meaning “the total of the cash sale price of the goods or services and the amount, if any, included for . . . service charge.”
 
 [9]
 

 And the term “service charge” was defined as being synonymous with “time price differential.” Section 1802.10 provided: “ ‘Time Price differential’ or ‘service charge’ means the amount however denominated or expressed which the retail buyer contracts to pay or pays for the privilege of purchasing goods or services to be paid for by the buyer in
 
 *879
 
 installments. . . . Wherever either of such terms is required to be used under the provisions of this chapter the other may be used interchangeably.”
 
 [10]
 

 Thus, the definitional sections of the Act made it clear that the Legislature intended to treat all retail installment credit sales as conceptually the same, regardless of distinctions in form between revolving and nonrevolving transactions. Revolving accounts were defined as providing “for a service charge which is expressed as a percent of the periodic balances” (§ 1802.7) and “service charge” was defined as being coextensive with “time price differential.” Thus, when the Legislature prescribed rates for revolving accounts in former § 1810.4 and spoke of such rates in terms of a “service charge,” it was consciously and deliberately applying the time-price doctrine to revolving accounts.
 

 In the final report on the Act, the Legislature explicitly stated that the time-price doctrine is applicable to revolving accounts. This report states: “There are two different methods being used for determining the amount of the finance charge. One is the ‘time price differential’ method, which provides for the addition of a precomputed amount to the amount being financed, and the other is the ‘credit service charge’ method which provides for payment by the buyer of a percentage of the outstanding balance at the end of each monthly period. Each of these methods is considered as the difference between a cash price and a time price for the purpose of affording the seller or holder a return on his investment plus his operating costs and profit, but neither method is looked upon as interest for a loan or forbearance.” (Final rep., pp. 14-15.)
 

 This legislative intention was clearly reiterated in the final report in a notation to section 1802.10’s definition of “time price differential.” The report stated, with respect to section 1802.10, that: “The intent of this definition is to classify financing charges as time price differentials regardless of whether such charges are precomputed at the time of sale or are computed on the outstanding balances from month to month, and thereby divorce these charges from any definition of interest.” (Final rep., p. 28 at fn. 7.)
 

 
 *880
 
 [Having been tried before
 
 Boerner, supra,
 
 was decided] [t]hese cases raised a question of first impression in California [, at that time]. [The question was:] whether retail revolving accounts and the finance charges assessed thereon are subject to the time-price doctrine and whether the Act in so classifying them and authorizing nominal finance rates on such accounts of
 
 IVi
 
 percent and 1 percent per month is constitutional.
 

 For the reasons hereinafter set forth, [we] have concluded that revolving charge accounts are validly classified as subject to the time-price doctrine, are not loans or forbearance of money, are not subject to the usury laws, and that the Act is constitutional.
 

 In asking this court to declare an act of the Legislature unconstitutional, plaintiffs have shouldered a heavy burden. There is a strong presumption in favor of the constitutionality of an act of the Legislature, and any doubts must be resolved by the courts in favor of the Legislature’s action.
 
 (Delaney
 
 v.
 
 Lowery
 
 (1944) 25 Cal.2d 561 [154 P.2d 674].)
 

 By 1934, when article XX, § 22 [now art. XV] of the Constitution, amending the 1918 usury initiative, was adopted, prescribing a 10 percent per annum maximum rate of interest for the loan or forbearance of money, it had been established by
 
 Verbeck
 
 v.
 
 Clymer
 
 (1927)
 
 supra, 202
 
 Cal. 557, and subsequent cases, that a credit sale (time-price differential) was not a loan or forbearance, and hence not interest. Under well-settled rules of interpretation, the terms “loan or forbearance” as used in [art. XV], must be deemed to have incorporated into the Constitution this settled interpretation of the terms “loan or forbearance” as used in the 1918 initiative, so that the reference to “loan or forbearance” in the 1934 amendment must be deemed to exclude credit sales under the time-price doctrine.
 
 (County of Sacramento
 
 v.
 
 Hickman
 
 (1967) 66 Cal.2d 841 [59 Cal.Rptr. 609, 428 P.2d 593]. See also,
 
 Dennis
 
 v.
 
 Sears, Roebuck & Co.
 
 (1969) 223 Tenn. 415 [446 S.W.2d 260].)
 

 Where, as here, the Legislature has enacted a statute based on its construction of the Constitution, viz., that retail installment sales, including revolving charge accounts, are subject to the time-price doctrine, and are not loans of money and thus not subject to the usury law, which construction is not clearly and unquestionably insupportable, the courts must defer to such interpretation. As stated in
 
 Lundberg
 
 v.
 
 County of Alameda
 
 (1956) 46 Cal.2d 644 [298 P.2d 1]: “The presumption is in favor of constitutionality, and the invalidity of an act of the
 
 *881
 
 Legislature must be clear and unquestionable before the statute can be declared unconstitutional. We cannot adopt our own interpretation of a provision of the Constitution without regard to the legislative construction, and where more than one reasonable meaning exists, it is our duty to accept that chosen by the Legislature.”
 

 While, as indicated, the precise question involved here has not heretofore been decided in California, it has been ruled upon in other jurisdictions, and, contrary to plaintiffs’ assertion (plaintiffs’ opening trial brief, p. 67), the majority of decisions in other states, including the so-called commercial states or jurisdictions which have considered this question, have held that finance charges on revolving charge accounts are subject to the time-price doctrine and not subject to the usury laws.
 

 [ ]
 
 Zachary
 
 v.
 
 R. H. Macy & Co., Inc.
 
 (1972) 31 N.Y.2d 443 [340 N.Y.S.2d 908, 293 N.E.2d 80], [ ]
 

 [ ]
 
 Sliger
 
 v.
 
 R. H. Macy & Co.
 
 (1971) 59 N.J. 465 [283 A.2d 904];
 
 Kass
 
 v.
 
 Garfinckel
 
 (D.C.App. 1973) 299 A.2d 542;
 
 Rose
 
 v.
 
 Sears, Roebuck & Co.
 
 (1973) 12 Ill.App.3d 929 [299 N.E.2d 95];
 
 Dennis
 
 v.
 
 Sears, Roebuck & Co.
 
 (1969) 223 Tenn. 415 [446 S.W.2d 260];
 
 Cecil
 
 v.
 
 Allied Stores Corp.
 
 (1973) 162 Mont. 491 [513 P.2d 704].
 

 Plaintiffs cite appellate decisions from Arkansas, Nebraska, Wisconsin, South Dakota and Iowa as reaching a contrary conclusion. However, the Arkansas and Nebraska decisions are not helpful, since those courts rejected the time-price doctrine in its entirety, and thus are contrary to the rule followed by the California courts. The decisions in Wisconsin, Iowa and South Dakota are weakened as precedent for several reasons, including the fact that the legislatures in those states subsequently enacted Unruh Act type statutes with respect to retail revolving charge accounts.
 
 [11]
 

 As pointed out in
 
 Glaire
 
 v.
 
 La Lanne-Paris Health Spa, Inc.
 
 (1974)
 
 supra,
 
 12 Cal.3d 915, “ ‘the courts have been alert to pierce the veil of any plan designed to evade the usury law and in doing so to disregard the form and consider the substance.’ ” The evidence introduced at the trial herein clearly establishes that defendants have not engaged in subterfuge or fraudulent practices with respect to their revolving charge accounts and the billing of finance charges thereon. On the contrary, it appears
 
 *882
 
 that defendants have acted in good faith and have complied with the applicable provisions of the Act and the Federal Truth in Lending Act.
 
 [12]
 
 The Act specifically authorizes the finance charges billed by defendants and their manner of billing them on revolving charge accounts. (See
 
 Seibert
 
 v.
 
 Sears, Roebuck & Co.
 
 (1975)
 
 supra,
 
 45 Cal.App.3d 1.)
 

 Defendants’ practices and finance charges with respect to revolving charge accounts are subject to regulation by the Legislature and are regulated by the Act. If consumer groups or representatives believe that the rates charged are too high or that additional regulations are needed, the appropriate forum in which to seek such relief is the Legislature, and not the courts. The Legislature with its capacity to hold committee hearings, to investigate and gather pertinent information and to hear from all interested parties is far better equipped to pass on such questions than are the courts which can only act on issues presented in a particular case involving only the parties to that suit.
 

 The Union Case
 

 To the extent applicable, the discussion set forth above with respect to the retailer defendants is adopted as to Union.
 

 Plaintiffs urge that Union’s revolving credit card accounts are not subject to the time-price doctrine because the vast majority of Union’s service stations are owned and operated by independent dealers, who are the sellers of the gasoline and other products to the customers, and that Union simply finances such sales, and thus the finance charges assessed by Union to its credit card holders are interest and subject to the usury law.
 

 However, the cases which have considered this question hold that such tripartite arrangements come within the ambit of the time-price doctrine. This problem was analyzed as follows in
 
 Kass
 
 v.
 
 Central Charge Service, Inc.
 
 (D.C.App. 1973) 304 A.2d 632:
 

 “The only real issue raised by this appeal, in light of our recent decision in
 
 Kass
 
 v.
 
 Garfinckel,
 
 D.C.App., 299 A.2d 542 (1973) is whether there is a legally significant difference between an in-house revolving credit plan as in
 
 Garfinckel
 
 and a revolving credit plan operated by a financial institution for the benefit of participating retail merchants as in
 
 *883
 
 the case at bar, which we have previously described as an open end consumer credit plan. . . .
 

 “In
 
 Garfinckel, supra,
 
 we held that the operation of a revolving credit arrangement by the retailer, resulting in an interest rate of 18 percent per year, was not usurious within the framework of the District’s usury laws in that it came within ‘the time-price doctrine as it exists in this jurisdiction.’
 

 “The relationship of the parties and their contentions here are essentially similar to those in
 
 Garfinckel
 
 except for the fact that the defendant here is not a retailer, but rather is a financial institution in the business of issuing credit cards which are honored by thousands of independent merchants in the Washington area. . . .
 

 “. . . Although the arrangements entered into by Central Charge are slightly different from those employed in retailer-operated revolving charge account agreements, they are sufficiently similar to entitle Central Charge to the same beneficial exemption from the usuiy laws being accorded retailers who operate their own plans. Indeed, a contrary ruling would unfairly discriminate against the thousands of smaller independent merchants who subscribe to the Central Charge Service. They would be placed at a competitive disadvantage vis-a-vis large department stores if Central Charge were forced out of business. [Fn. omitted.]
 

 “We agree with the trial court and accordingly affirm. In
 
 Uni-Serv Corp. of Massachusetts
 
 v.
 
 Commissioner of Banks,
 
 349 Mass. 283, 207 N.E.2d 906, 908 (1965), where the sole issue was whether the defendant was in the business of making loans, the Supreme Judicial Court of Massachusetts held that a plan, which is identical in all essential details to the Central Charge Plan herein, was ‘essentially a time sales financing arrangement in which credit is extended for the sole purpose of purchasing goods or services from stores participating in the plan. . . . The fact that the ultimate creditor is Uni-Serv and not the seller of goods or services is likewise of no consequence. . . .’
 

 
 *884
 
 “Thus finding that there is no meaningful distinction between the arrangement herein and the one presented in
 
 Garfinckel, supra,
 
 we affirm.”
 

 For other cases reaching a similar conclusion, see
 
 Uni-Serv Corp. of Mass.
 
 v.
 
 Commissioner of Banks
 
 (1965) 349 Mass. 283 [207 N.E.2d 906];
 
 Acker
 
 v.
 
 Provident Nat’l. Bank
 
 (3d Cir. 1975) 512 F.2d 729;
 
 Standard Oil Co.
 
 v.
 
 Williams
 
 (1972) 153 Ind.App. 489 [288 N.E.2d 170]. In my opinion, the conclusion reached in these cases is sound and is applicable here.
 

 [We] also find that under the evidence in this case, Union qualifies as a “retail seller” as that term is defined in section 1802.3 of the Act, and is subject to the provisions of the Act.
 

 For the foregoing reasons, [we] find that the Union revolving accounts are not subject to the usury law.
 

 The Mobil Case
 

 Mobil issues two types of credit cards to its customers, viz., 1) a nonrevolving plan for gasoline purchases, and 2) a revolving plan limited to purchases of tires, batteries and accessories. Only the nonrevolving plan is involved here. Under this plan, payment for purchases is due upon receipt of the monthly statement, and if not paid within 25 days thereafter, a finance charge of
 
 VA
 
 percent per month is assessed on the balance due.
 

 For the applicable reasons set forth in the retailer and Union cases, the court holds that the time-price doctrine is applicable here, the finance charges are not interest and not subject to the usury law.
 

 For still another reason, the Mobil finance charge is not usurious. As noted above, the Mobil credit card agreement requires the bill to be paid when rendered. It is only where the customer breaches the agreement and fails to make payment within 25 days of receipt of the bill that a finance charge is assessed. Since the contract at its inception does not require a usurious payment, and it is only because of the customer’s voluntary act in failing to make the payment when due that a finance charge is levied, under the applicable law such charge cannot be usurious.
 
 {Sharp
 
 v.
 
 Mortgage Security Corp.
 
 (1932) 215 Cal. 287 [9 P.2d 819];
 
 Abbott
 
 v.
 
 Stevens
 
 (1955) 133 Cal.App.2d 242 [284 P.2d 159].)
 

 
 *885
 
 Plaintiffs urge that, if this late charge is not interest, it must constitute “damages” and as such is an invalid liquidated damage provision or penalty within the prohibition of section 1670 of the Civil Code.
 

 In support of this contention, plaintiffs rely principally on
 
 Garrett
 
 v.
 
 Coast & Southern Federal Savings
 
 (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39]. However, that case is distinguishable in that there the late charge was held to be unreasonable since it was assessed at 2 percent of the unpaid principal balance, most of which was not due; whereas, Mobil’s late charge is assessed only on amounts due.
 

 The uncontradicted evidence introduced here shows that Mobil’s credit card operation operates at a substantial loss, that delinquent accounts cost a substantial amount to process, that the 1
 
 1/2
 
 percent late charge does not cover this extra expense, that it would be impracticable, extremely difficult and expensive to attempt to determine the actual damage sustained by Mobil as the result of a customer’s default, and that the late charge represents a reasonable endeavor to fix Mobil’s probable loss resulting from delinquent payments, bears a reasonable relation to such loss and is reasonable in amount. The court concludes that, if Mobil’s finance charges are to be regarded as damages, they are a valid late charge and do not contravene sections 1670 and 1671 of the Civil Code.
 

 We end our quotation from the trial court’s memorandum at this point.
 

 The trial court’s intended memorandum of decision does not deal with appellants’ contentions that the trial court erred in denying their motion for leave to file a supplemental complaint, that the court erred in overruling their objections to the proposed findings and conclusions, and that the trial court erred in vacating the class certification order in the action against respondent Mobil. The question of whether appellants should have been able to file a supplemental complaint against Union for damages from the date the complaint was filed through the date the final judgment was entered is moot considering the result in the case at bench. Furthermore, we note that “the motion to file a supplemental pleading is addressed to the sound legal discretion of the court. . . .”
 
 (Flood
 
 v. Simpson, 45 Cal.App.3d 644, 647 [119 Cal.Rptr. 675].)
 

 As explained above, we will not consider appellants’ objections to the proposed findings of fact and conclusions of law since appellants’ opening brief does not contain an adequate summary of all the evidence. We
 
 *886
 
 realize that the records in this case are lengthy, but that is an additional reason why appellants should seek to provide this court, which does not have a duty to review the entire record on appeal, with a complete summary of the evidence when they object to the findings of fact.
 

 Appellants finally contend that the trial court erred in vacating the class certification order in the action against respondent Mobil. This is also a moot point considering that the court in effect decided that there is no cause of action against respondent Mobil. This is even a stronger case than
 
 Chern
 
 v.
 
 Bank of America,
 
 15 Cal.3d 866, 874-875 [127 Cal.Rptr. 110, 544 P.2d 1310], wherein the named representative argued that she should be permitted to represent the class despite her own inability to prevail on the merits. The Supreme Court concluded the trial court had properly dismissed the class action damage count.
 

 The judgments are affirmed.
 

 Roth, P. J., and Fleming, J., concurred.
 

 A petition for a rehearing was denied July 10, 1979, and the petition of appellants in
 
 Reuben
 
 v.
 
 Union Oil Company
 
 and
 
 Fox
 
 v.
 
 Mobil Oil Corporation
 
 for a hearing by the Supreme Court was denied August 15, 1979. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.
 

 [1]
 

 The department store defendants at trial were Federated Department Stores, Inc. (Bullock’s, Inc.); Fedco, Inc.; May Department Stores Company (May Company);
 
 *871
 
 Associated Dry Goods Corporation (Robinson’s); Sears, Roebuck and Company; Broadway-Hale Stores, Inc. (Broadway): Montgomery Ward & Company; J. C. Penney Company, Inc.; Ohrbach’s, Inc.; and Gemco, Inc.
 

 [2]
 

 In their opening brief, appellants concede that the case of
 
 Boerner
 
 v.
 
 Colwell Co.,
 
 21 Cal.3d 37 [145 Cal.Rptr. 380, 577 P.2d 200], insulates legitimate sales transactions of department store defendants from claims of usury. As a result essentially all of appellants’ argument is directed toward the defendant oil companies. However, as respondents pointed out, appellants filed a letter with the court explaining that they were not abandoning any cause of action against department stores. The issue that applies to the department stores is the alleged unconstitutionality of the Unruh Act. This was improperly raised only in appellants’ reply brief rather than in their opening brief. Nonetheless, we address the issue of constitutionality.
 

 [3]
 

 While appellants object to some of the findings, “to effectively raise the issue of sufficiency of the evidence, the appealing party must present to the appellate court all of the evidence touching upon the question involved. When the appellant fails to abide by
 
 *873
 
 this well established and necessary rule of appellate practice, the appellate court is entitled to indulge in a presumption that the evidence sustains the determination of the trial court. [Citations.]”
 
 (Strutt
 
 v.
 
 Ontario Sav. & Loan Assn.,
 
 28 Cal.App.3d 866, 874 [105 Cal.Rptr. 395].) “The reviewing court is not called upon to make an independent search of the record where this rule is ignored. [Citations.]” (
 
 Weltman
 
 v.
 
 Kaye,
 
 167 Cal.App.2d 607, 615 [334 P.2d 917].) Although the briefs in this case are lengthy, appellants have not complied with this rule. We therefore accept the findings of the trial court.
 

 [4]
 

 Brackets together in this manner [ ] without enclosing material, are used to indicate deletions from the memorandum of the trial court; brackets enclosing material are, unless otherwise indicated, used to denote insertions or additions by this court.
 

 [5]
 

 Judge Levit’s intended decision was written prior to the renumbering of section 22 of article XX. We use the present number article XV.
 

 [6]
 

 For the reason that charges are not interest, there is no need for computation of the true yield. [Footnote numbers in the quoted memorandum are those of the trial court.]
 

 [7]
 

 The term “deferred payment price” was substituted for “time sale price” in 1970 when the Act was amended to conform its terminology to Federal Truth in Lending. Statutes 1970, chapter 546, section 3, at page 1041.
 

 [8]
 

 The term “service charge” was changed to “finance charge” in 1970 to conform to Truth in Lending terminology. Statutes 1970, chapter 546, section 5, at page 1042.
 

 [9]
 

 In 1969, the term “time sale price” was changed to “deferred payment price” (Stats. 1969, ch. 625, § 2, at p. 1265), and in 1970 the term “service charge” was changed to “finance charge” (Stats. 1970, ch. 546, § 6, at p. 1042). Both changes were to conform the terminology to Truth in Lending.
 

 [10]
 

 In 1969, the term “time price differential” was changed to “finance charge” (Stats. 1969, ch. 625, § 3, at p. 1265), and in 1970 the term “service charge” was deleted (Stats. 1970, ch. 546, § 7, at p. 1042). Both changes were made to conform to the terminology of Truth in Lending.
 

 [11]
 

 See Wisconsin Laws 1971, chapter 239; South Dakota Compiled Laws section 54-11-6; Iowa Consumer Credit Code section 537.2202.
 

 [12]
 

 15 United States Code section 1601 et seq.