TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-101 |
| of | : | |
| | : | May 9, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |

_____

THE HONORABLE JOHN R. LEWIS, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a retail installment contract that is subject to the Unruh Act include a document preparation charge or, in transactions where the Unruh Act allows the taking of real property security, a charge for title insurance?

CONCLUSION

A retail installment contract that is subject to the Unruh Act may not include a document preparation charge, except as part of the finance charge, but in transactions where the Unruh Act allows the taking of real property security, a separate charge for title insurance may be included in the contract.

ANALYSIS

The Unruh Act (Civ. Code, §§ 1801-1812.20; "Act")[1] is a comprehensive statutory scheme governing retail credit and installment sales of various goods and services. Its

_____

[1]  All undesignated section references hereafter are to the Civil Code.

purpose was explained in *Crawford* v. *Farmers Group, Inc.* (1984) 160 Cal.App.3d 1164, 1168, as follows:

> ". . . The Unruh Act was enacted to correct abuses incident to the growth of the consumer credit industry. (See *King* v. *Central Bank* (1977) 18 Cal.3d 840, 843-844.) The act proscribes a variety of unfair practices and requires complete disclosure to the consumer of the total cost for the purchase of goods and services under a retail installment contract."

The Act covers contracts for a retail installment sale[2] in which: (1) the buyer agrees to pay a finance charge that is added to the unpaid balance; (2) the goods or services are available at a lesser price if paid for by either cash or credit card; (3) the buyer would have received additional or higher quality goods or services if he had paid cash equal to the total amount paid in installments; or (4) payment is made in more than four installments. (§ 1802.6.) Covered "goods" are those "for use primarily for personal, family or household purposes." (§ 1802.1.) Contracts for certain items, such as marine vessels exceeding $25,000 in price, are not covered by the Act. (§ 1801.4.)

We are first asked to determine whether a retail installment contract that is subject to the Act may include a document preparation charge. We conclude that such a charge may not be imposed separately but may be included as part of the finance charge.

For purposes of this opinion, we construe a "document preparation charge" to mean a fee imposed for the preparation of any documents in connection with the sale by installment contract of goods or services covered by the Act. We find that the imposition of such a charge is governed by section 1805.4, which provides in part:

> "The finance charge shall be inclusive of all charges incident to investigating and making the contract and for the extension of the credit provided for in the contract, and no fee, expense or other charge whatsoever shall be taken, received, reserved or contracted for except as otherwise provided in this chapter."

A document preparation charge would be a charge "incident to . . . making the contract." As such, it could only be imposed as part of the finance charge.[3] Examining the other provisions

---

[2] Installment or revolving accounts (§ 1802.7) are treated separately from installment contracts under the Act.

[3] A "finance charge" is generally defined in section 1802.10 as "the amount however denominated or expressed which the retail buyer contracts to pay or pays for the privilege of purchasing goods or services to be paid for by the buyer in installments." (§ 1802.10.) Certain

of the Act, we can find none which would permit a fee for document preparation to be separately charged.[4]   No ambiguity in the Act can be demonstrated in this regard.

We note that the absence of a provision for a document preparation charge in the Unruh Act is made conspicuous by the fact that such a provision does appear in the Rees-Levering Act (§§ 2981-2984.4), a comparable statute governing the installment sales of motor vehicles.   The Rees-Levering Act expressly includes a "document preparation fee" in its definition of "cash price" (§ 2981, subd. (e)) and as being among the items to be disclosed in the amount financed (§ 2982, subd. (a)(1)(B)).   Under these circumstances, we may invoke the principle of statutory construction that "`where a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted.'"   (*Stickel* v. *Harris* (1987) 196 Cal.App.3d 575, 591.)

We thus conclude that the Act does not permit a document preparation charge to be included except as a component of the overall finance charge.

The second part of the question posed concerns whether the Act permits a separate charge for title insurance when the transaction involves the taking of real property security.[5]   We conclude that a separate charge for title insurance may be assessed.

While insurance premiums are excluded from the finance charge (see § 1802.10),[6] the cost of such premiums may be made a separate charge in the contract

items are excluded in section 1802.10 from the definition of a finance charge; however, a document preparation charge is not among the exclusions.

[4]   The Act contemplates that charges in the amount to be financed include the cash price of the goods and services to be sold, taxes imposed on the sale, official fees, a finance charge, and insurance premiums not included in the finance charge.   (See § 1803.3, subd. (c).)   After the contract has been made, certain charges may be imposed for extending or deferring the due date and for default and collection costs.   (See §§ 1803.6, 1807.1, 1811.1.)   Expenses incurred in repairing or preserving the goods and maintaining any security interest may also be recovered by the seller. (See § 1802.10.)

[5]   Section 1804.3, subdivision (b) permits the use of real property security in a covered transaction only if the goods are to be attached to real property.

[6]   This is consistent with the treatment of title insurance premiums under federal Regulation Z (12 C.F.R. Part 226) which mandates the method of credit disclosure under the Act.   (See §§ 1802.18, 1803.3, subd. (b).)   Under Regulation Z, the term "finance charge" excludes bona fide and reasonable charges for title insurance.   (See 12 C.F.R. § 226.4(c)(7)(i).)

(§ 1803.5) and are includable as part of the "total sale price" (§ 1802.9) and the "unpaid balance" (§ 1802.11, subd. (b)).  The premiums are subject to disclosure as part of the "amount financed."  (§§ 1802.11, subd. (a); 1803.3, subd. (c)(3).)  There is no express limitation in the Act as to the type of insurance for which premiums may be charged.

We conclude that in transactions where the Act allows the taking of real property security, the Act permits the contract to include a separate charge for title insurance.

* * * * *